IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

<u>MIDDLE DIVISION</u>

| | |
|---|---|
| KESTER OBOMIGHIE, | ) |
| | ) |
| Petitioner, | ) Civil Action Number: |
| | ) |
| v. | ) |
| | ) 4:11-cv-03978-WMA-RRA |
| ERIC HOLDER, U. S. Attorney | ) |
| General, et al., | ) |
| | ) |
| Respondents. | ) |

<u>RESPONDENTS' RESPONSE TO THIS HONORABLE
COURT'S ORDER ENTERED ON NOVEMBER 29, 2011</u>

Come now the Federal Respondents, Eric Holder, Attorney General of the United States of America, Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), Phillip T. Miller, Field Director of the New Orleans Office for the United States Immigration and Customs Enforcement ("USICE"), Scott Hassell, Warden Etowah County Detention Center, by and through Joyce White Vance, United States Attorney for the Northern District of Alabama, and John Charles Bell, Assistant United States Attorney for this District, and pursuant to the Court's order of November 29, 2011, respond as follows:

I. Introduction

The Petitioner, Kester Obomighie ("Obomighie"), is a deportable alien

awaiting removal from the United States following the completion of his service time pursuant to his conviction of criminal offenses in the United States. Obomighie filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 in which he is challenging his detention pending removal. *See* Petition. The Federal Respondents submit that the Petition is due to be denied as set out below.

## II. Facts

Obomighie, is a citizen of the Nigeria. Obomighie entered the United States on or about September 21, 1985, in New York, New York, with authorization to remain in the United States until March 20, 1986. Exh. # 1, Declaration of Gerald Smith ("Smith Dec."), dated January 3, 2012, at ¶ 2. On June 12, 1991, Obomighie was accorded Lawful Permanent Resident status as a conditional resident alien. *Id.* at ¶ 3.

On May 20, 1993, Obomighie was convicted in the United District of Maryland for Fraud and Related Activity In Connection With Access Devices. *Id.* at ¶ 4. On June 15, 1994, Obomighie was convicted in the District Court of Baltimore, Maryland for Domestic Violence . *Id.* at ¶ 6. One June 21, 1994, Obomighie's conditional permanent residence was terminated. *Id.* at ¶ 7. On May 6, 1996, Obomighie failed to appear before the Immigration Judge ("IJ") and he was ordered removed to his native country Nigeria. *Id.* at ¶ 8. A Motion to Re-open

the case was granted by the IJ and on February 24, 1998, Obomighie was present and was ordered removed again. *Id.* at ¶¶ 9-10. Obomighie appealed the decision and on December 29, 1998, the case was remanded to the IJ at Baltimore, Maryland. *Id.* at ¶¶ 11-12. On November 8, 2004, Obomighie failed to appear before the IJ in Baltimore, Maryland, and he was ordered removed. *Id.* at ¶ 13.

On October 26, 2009, Obomighie was located in the Baltimore County Detention Center after being arrested for possession of a controlled substance and completing a six month sentence. *Id.* at ¶ 14. He was detained at the Howard County Detention Center. *Id.*

DHS/ICE pursued travel Documents and on February 1, 2011, a travel document was issued by the Consulate General of Nigeria. *Id.* at ¶¶ 15 and 18. Obomighie was afforded a post order custody review by the Baltimore Field Office and was served with a notice of continue detention on December 15, 2010. *Id.* at ¶¶ 16-17.

On February 8, 2011, Obomighie physically refused to board the aircraft at Dulles International Airport, thereby refusing to submit to his removal as order by the IJ. *Id.* at ¶ 19. On February 18, 2011, and June 8, 2011, Obomighie was served with a Failure to Comply Notice. *Id.* at ¶ 20. Since that time DHS/ICE have been working diligently to get new travel documents for Obomighie . *Id.* at ¶¶ 126-32.

The government of Nigeria has not indicated that they would not authorize another travel document for Obomighie. *Id.* at ¶ 33. All regulations and guidelines have been followed. *See generally* Exh. # 1.

### III.  Respondents' Position

The Federal Respondents take the position that Obomighie named at least three (3) improper Respondents and thus those Respondents are due to be dismissed. However, should this Honorable Court decide not to dismiss these three Federal Respondents in this petition based on this point, the Federal Respondents assert that Obomighie is a deportable alien and is properly detained pending his deportation. The Assistant Field Office Director, Gerald Smith, after reviewing the file, specifically notes that Obomighie has been non-cooperative and has not acted in good faith, which resulted in Obomighie being served with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g). Exh. # 1 at ¶¶ 9 and 12.

### IV.  Analysis and Argument of the Respondents' Position

   A.   The Petitioner Has Named Three Improper Respondents for This Petition and Those Defendants Are Due to be Dismissed.

The Supreme Court held that in cases challenging physical custody, "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause, shall be directed to the person

having custody of the person detained."); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."); *See also, Macias v. Greene*, 28 F. Supp. 2d 635, 637 (D. Colo. 1998) (holding "[t]he proper respondent to a habeas action is the habeas petitioner's custodian."). More specifically, for "physical confinement" habeas actions, the proper respondents are the wardens of the facilities where the habeas petitioners are being held. *Rumsfeld*, 542 U.S. at 435. This is logical because the writ acts against the person who has "day-to-day control over [the] prisoner." *Brittingham v. United States*, 982 F.2d 378, 378 (9th Cir. 1992); *See also*, *Ex Parte Endo*, 323 U.S. 283, 306 (1944) (writ is directed to prisoner's "jailer"); *Guerra v. Meese*, 786 F.2d 414, 416 (D.C. Cir. 1986) (Parole Commission is not a custodian despite its power to release the petitioner). The Attorney General for the United States of America, the Secretary of Homeland Security, and the ICE Field Director for New Orleans, are not the proper Respondents in a habeas petition.

      The United States Court of Appeals for the Tenth Circuit Court of Appeals held that the warden of a detention facility – the person actually holding the petitioner in physical custody – is the proper respondent for a habeas action, not the Attorney General. *Blango v. Thornburgh*, 942 F.2d 1487, 1491-92 (10th Cir.

1991). "Otherwise, the Attorney General of the United States could be considered the custodian of every alien and prisoner in custody because [he] ultimately controls the [INS] district directors and [the] prisons." *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994); *see also Vasquez v. Reno*, 233 F.3d 688, 693, 696 (1st Cir. 2000). In short, these three Federal Respondents are not proper Respondents and are due to be dismissed as a matter of law.

> B. As a Deportable Alien, the Petitioner is Not Entitled to Release Pending Deportation.

Statutorily, under 8 U.S.C. § 1231(a)(2), after entry of a final removal order, deportable aliens must be held in custody for a period of 90 days while removal arrangements are made final with the accepting country. Under 8 U.S.C. § 1231(a)(6) the statute provides that where removal arrangements cannot be finalized within the 90-day period, an alien ordered removed who is: (1) "inadmissible," or (2) "removable" for violating status requirements, entry conditions, or the criminal law, or for reasons of security or foreign policy, or (3) determined by the Attorney General to be a risk to the community or unlikely to comply with the removal order, "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision." Two permanent resident aliens subject to deportation for criminal convictions were detained past the 90-day period authorized for final removal under 8 U.S.C. § 1231(a)(2). They

were detained under the authority of 8 U.S.C. § 1231(a)(6).

In the Case at bar, it is important to note that a final administrative removal order has been issued. *See generally* Exh. #1. All of Obomighie's travel documents and paper work were completed and he was scheduled for removal and he refused to be removed and would not board the aircraft. *Id.* at ¶ 19. All regulatory guidelines have been followed. Gerald Smith, Assistant Field Office Director, does not foresee a problem in receiving all necessary documents to deport Obomighie in the forseeable future. Exh. # 1 at ¶ 33. It is important to note that Obomighie is not eligible for a Post Order Custody Review, because of his lack of compliance.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the United States Supreme Court addressed this issue. In *Zadvydas*, two cases were consolidated. *Id.* at 678. One of the Petitioners, Kestutis Zadvydas, was born in Lithuania to German parents, but later immigrated to the United States. *Id.* He had a long criminal record involving drug crimes, attempted robbery, attempted burglary, and theft. *Id.* at 683. Although Zadvydas was ordered deported, neither Lithuania nor Germany would admit him because Zadvydas was not a Lithuanian or German citizen. *Id.* In 1995, after being held in custody for nearly a year while awaiting deportation, Zadvydas sought habeas review, pursuant to 28 U.S.C. § 2241, in the United States District Court for

the Eastern District of Louisiana. *Id.* In 1997, the District Court ordered Zadvydas released, determining that the Government would never effectuate his deportation, thereby rendering his detention both permanent and unconstitutional. *Id.* at 678. The United States Court of Appeals for the Fifth Circuit reversed the District Court's decision, reasoning that no constitutional concerns would be implicated as long as deportation remained a possibility, the Government continued its good faith efforts to achieve removal, and Zadvydas' detention was subject to periodic administrative review. *Id.*

The other Petitioner, Kim Ho Ma, was a permanent resident alien with Cambodian citizenship. *Id.* He was convicted of manslaughter for a gang-related shooting. Id. Because the United States and Cambodia did not have a deportation treaty, Ma could not be deported. After being detained beyond the 90-day period provided for in §1231(a)(2), Ma filed a petition for habeas review in the United States District Court for the Western District of Washington. *Id.* The District Court ruled that Ma's continued detention was unconstitutional unless the Government could show a "realistic chance" that Ma ultimately would be deported. *Id.* Because Cambodia would not accept Ma without an effective deportation treaty in place, the District Court determined that the Government could not make this showing. *Id.* The United States Court of Appeals for the Ninth Circuit affirmed the decision,

concluding that the statute "did not authorize detention for more than a reasonable time beyond the 90-day period authorized for removal." *Id.* at 678.

The United States Supreme Court states that, "The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissable aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any necessary to bring about that alien's removal form the United States. *Zadvydas v. Davis*, 533 U.S. 678, 688-689 (2001).

As an inadmissable alien or criminal alien, the Petitioner does not fall within the protections of *Zadvydas v. Davis*, 533 U.S. 678 (2001) and may be indefinitely detained pending deportation to his homeland as the state of the law currently exists within the Eleventh Circuit. *Jean v. Nelson*, 727 F.2d 957 (11th Cir. 1984) (en banc);  *Shaughnessy v. United States ex rel Mezei*, 345 U.S. 206 (1953).

It is clear, per *Zadvydas*, while Obomighie is not due to be detained indefinitely, he does have to comply with the laws of the United States of America.

Also, Obomighie is being properly held under 8 U.S.C. § 1231(a)(6). DHS has once again requested travel documents from Nigeria, as Obomighie refused to board the plane on February 8, 2011.  Thus, the United States is diligently pursuing

the removal of the Petitioner. DHS has continued to follow all regulatory requirements. *See generally*, Exh. # 1. Clearly, Obomighie has not complied in good faith. *See* 8 U.S.C. § 1231(a)(1)(c). Thus, the decision to detain Obomighie within the parameters set forth by the United States Supreme Court.

In sum, given the above cited law, the execution of the regulatory/statutory guidelines, i.e., the full review of Obomighie's file, and the fact that he is deportable in the "forseeable future," the Petition is due to be denied.

C. The Respondents are entitled to Detain the Petitioner Pending Removal.

Even if the Petitioner was subject to the protections of the *Zadvydas* case, he is still not entitled to relief. The authority to detain criminal aliens after the issuance of a final removal order is found at section 241(a) of the INA, 8 U.S.C. §1231(a). Under this provision, the Attorney General is afforded a ninety-day period to accomplish the alien's removal from the United States following the entry of a final order of deportation or removal. *See* INA §241(a)(1)(A)-(B), 8 U.S.C. § 1231(a)(1)(A)-(B).

8 U.S.C. §1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
>
> (I) The date the order of removal becomes

>administratively final;
>
>(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or
>
>(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

                    8 U.S.C. §1231(a)(1)(B).

The authority to detain criminal aliens was clarified by the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), a case invoked by the Petitioner.  There, the Court held that section 241(a) of the INA authorized immigration detention, after entry of an administratively final order of deportation or removal, for a period reasonably necessary to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700.  The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal after the removal period has commenced.  *Id.* at 701.

It should be noted that the *Zadvydas* Court did not require that every alien who has been in detention for more than six months be released.  To the contrary, the Court held:

>After this 6-month period, once the alien provides good reason to believe that there is no significant

> likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  <u>This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future</u>.

*Id.* (Emphasis added).

Furthermore, so long as removal is reasonably foreseeable, the alien's potential dangerousness or risk of his committing further crimes may be considered in determining whether to retain custody. *Zadvydas*, 121 S.Ct. at 2504; *see also* 8 C.F.R. § 241.4 (2004).

This statute and corresponding regulations make it clear that the alien also has the burden to approach his or her government about securing a travel document.  Moreover, an alien may extend his removal period by "act[ing] to prevent the alien's removal" which includes acts that are not illegal, *see Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 at n.4 (11th Cir. 2002).

Moreover, an alien may extend the removal period where he fails to assist with deportation efforts.  8 U.S.C. §1231(a)(1)(c) states:

> [t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make a timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. §1231(a)(1)(c); *See also* 8 C.F.R. 241.4(g)(5)(I).

In the case at bar, Obomighie failed to cooperate and has actively obstructed the removal process. This behavior has been on going since November 8, 2004. Exh. # 1 at ¶ 13. In *Brown*, the United States District Court for the Northern District of Florida, denied a habeas petition because the petitioner had not acted in good faith to obtain travel or other necessary documents. *Brown v. Gonzales*, 2007 WL 2790585 *1 (N.D. Fla.). The court went on to state that once the petitioner complied in good faith that it would consider a new habeas, but not while he was "... preventing or hampering his departure." Brown WL 2790585 * 1.  In *Sango-Dema v. District Director*, *I.N.S.*, 122 F.Supp. 2d 213 (D.Mass. 2000), the court denied habeas relief where the petitioner was found to be the cause for the long delay." The court concluded that an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials. *Sango-Dema v. District Director, I.N.S.*, 122 F.Supp.2d at 221; *See also,* 8 U.S.C. § 1231(a)(1)(c) ("... or conspires or acts to prevent the alien's

13

removal subject to an order of removal."); *Hall v. Mukasey,* 2009 WL 5627646 (N.D. Ala.)(slip opinion).

In *Akinwale*, the Eleventh Circuit found that, in order to state a claim under *Zadvydas*, the alien not only must show post-order detention in excess of six (6) months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future (287 F.3d at 1052). Because Akinwale did not make such a showing, the Eleventh Circuit affirmed the District Court's dismissal of his habeas petition (*id.*). The *Akinwale* court also stated that the six (6) month presumptively reasonable removal period has to lapse before a detained alien may file for habeas corpus relief (287 F.3d at 1052).

In the case at bar, Obomighie cannot argue that his continued detention violates *Zadvydas* or that he has met his burden of proof under *Akinwale*. The Department's efforts to remove the Petitioner are ongoing. Obomighie's actions, which has resulted in his delay of removal, is well documented. Until the Petitioner cooperates, there is no way to determine the issue of forseeablity in this case. In *Pelich*, the court found that a petitioner's detention was indefinite only because he refuse [d] to cooperate with the Immigration and Naturalization Service's ("INS) efforts to remove him." *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir.2003). In such

circumstances, the court concluded that the petitioner had no cause to complain" because petitioner had "the 'keys [to his freedom] in his pocket' ", and affirmed the denial of the 2241 habeas petition. 329 F.3d at 1057-60, quoting *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir.1999). The basis for the ruling was self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich*, 329 F.3d at 1060.

It is clear that Obomighie was not willing to adhere to the laws of this country, as well as the ruling and orders that are forthcoming. Furthermore, it is clear that Obomighie is trying to manipulate the system by not providing truthful information or by operating in good faith to obtain travel and other documents, thereby preventing and hampering his departure.

## V.  Conclusion

Wherefore, for the above-stated premises and authorities, the Federal Respondents submit that Obomighie's habeas corpus petition is due to be denied.

## VI. Exhibits

Exhibit # 1:  Declaration of Gerald Smith ("Smith Dec."), dated January 3, 2012.

               Respectfully submitted,

               JOYCE WHITE VANCE
               United States Attorney

<div style="margin-left: 40%;">

/s/John Charles Bell
JOHN CHARLES BELL
Assistant United States Attorney
Attorney Bar Number ASB-2408-L73J
United States Attorney's Office
 Northern District of Alabama
1801 Fourth Avenue North
Birmingham, Alabama 35203
205-244-2104
205-244-2181 (Facsimile)
john.bell2@usdoj.gov

</div>

<div style="text-align: center;">

CERTIFICATE OF SERVICE

</div>

This is to certify that a copy of the foregoing has been served upon the Petitioner, by mailing a copy of the same by certified first class United States mail, postage prepaid, on this the 10th day of January 2012, addressed as follows:

<div style="margin-left: 30%;">

Kester Obomighie
A 029-697-189
Etowah County Detention Center
827 Forest Avenue
Gadsden, Alabama 35901.

/s/John Charles Bell
John Charles Bell
Assistant United States Attorney

</div>