FILED
2012 Jan-24 AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED **IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

2012 JAN 23 P 1: 12

KESTER OBOMIGHIE
N.D. OF ALABAMA

ALIEN NO: A029-697-189

Petitioner,

Versus.                    **11 - CV –03978-WMA-RRA.**

ERIC H. HOLDER, Attorney General
Of the United States;

PHILIPS T. MILLER Field Office Director
For NEW ORLEANS Field Office;

BUREAU OF IMMIGRATION AND CUSTOMS
ENFORCEMENT;

DEPARTMENT OF HOMELAND SECURITY; And

CHIEF SCOTT HASSEL, WARDEN,
ETOWAH COUNTY Detention Facility

Respondents.

---

**TO: HONORABLE JUDGE:**

**HABEAS CORPUS PETITION PURSUANT TO 28 U.S.C. SECTIONS 2241
AND PETITIONER'S REPLY TO RESPONDENTS ANSWER AND
RETURNS.**

### JURISDICTION AND VENUE

**A.**     Federal Jurisdiction is proper here in the Northern

District of Alabama, Under 28 U.S.C. Sections 2241. The

General Habeas Corpus Status provides that the Federal

Courts have the Authority to grant a Writ of Habeas Corpus

1

To a Person held "in violation of the Constitution of Laws
And Treaties of the United States, "28 U.S.C. Section 2241
(C)(3). The Petitioner Habeas Corpus Challenged the
Unlawful detention of ICE/DHS and this Court retains
Jurisdiction over Petitioner's claim.

Petitioner claims that the Writ of Habeas Corpus should
Be available to Him so that the Court can review the
Petitioner's claim. This Court has Habeas Jurisdiction over
This action under 28 U.S.C. Section 2241, and Federal
Question Jurisdiction under 28 U.S.C. Section 1331 and the
Declaratory Judgment act 28 U.S.C. Section 2201 and 28
U.S.C. Section 2241, confers Jurisdiction upon the Federal
Courts to hear these cases. Zadvydas v. Davis, 533 U.S.
678, 687, 121 S,Ct 2491, 150 L. Ed. 2d 653 (2001)(Citing 28 U.S.C.
Section 2241 (C)(3)(Authorizing any person to claim in Federal
Court that he or she is being held "in custody in violation of
The Constitution of laws.... of the United States").

The Supreme Court in Zadvydas noted that various pre-
IIRIRA statutory Changes "left Habeas untouched as the

2

Basic method of obtaining review of continued custody after

A deportation order had become final. "Id. (Citation

Omitted). And while the more recent Congressional

Enactments limit. The circumstances in which Judicial

Review of deportation decisions is Available, none applies to

"Deprive an alien of the right to rely on 28 U.S.C. Section

2241 to challenge Detention that is without statutory

Authority, Id. Thus, Zadvydas Concluded, ["28 U.S.C.

Section 2241"] Habeas Corpus proceedings Remain available

As a forum for statutory and constitutional Challenges to

post-removal- period-detention." 533 U.S. at 688.

## B.  **BACKGROUND HISTORY.**

Kester Obomighie is a Native and Citizen of Nigeria and

Who was admitted to the United States at New York, New York?

On or about September 21[th] 1985.

On June 12th 1991 Obomighie was accorded Lawful Permanent

Resident status bases upon his marriage to a United States

Citizen.

3

On May 20th 1993, Petitioner was convicted in the United States District Court of Maryland for Fraud and Related Activity in connection With Access Devices and sentenced to a term of 4 Months confinement and placed on supervised probation for a Term of 2 years.

On February 24, 1998, Petitioner was ordered removed by Immigration Judge at Baltimore Md. And was ordered Removed From the United States to Nigeria.

On March 24, 1998, Petitioner Obomighie appealed the IJ's Decision to the Board of Immigration Appeals ["BIA"].

On December 29, 1998 the Board remanded the case back to the Immigration Judge at Baltimore, Md.

On June 17th 2003, the parties reached a stipulation for administrative closure of the respondent's case.

On October 26, 2009, Obomighie was encountered in the Baltimore County Detention Center after being arrested for Possession of controlled substance and was detained at the Howard County Detention Center for One day, and this case is currently on appeal.

4

LEGAL STANDARDS

The general Habeas Petition statutes provides that the Federal Courts have the authority to grant a Writ of Habeas Corpus to a person held "In Violation of the Constitution of Laws and Treaties of the United States, 28 U.S.C. Section 2241 (C) (3). The Petitioner Habeas Petition challenged the Unlawful detention of ICE/DHS. The grounds for this Petition Are as follows.

## **ARGUMENT 1**

## **"WHETHER PETITIONER'S DETENTION OF 27 MONTHS IS JUSTIFIED WITHOUT A BOND HEARING OR CUSTODY REVIEW? SUGGESTED ANSWER IS NO.**

1. Petitioner respectfully submits this motion in response to the Respondent motion to dismiss the petitioner's habeas corpus petitions Pursuant to 28 U.S.C. Section 2241 (a). For the reasons provided below, the respondent fails to demonstrate that the Petitioner's motion be denied, As such respondent's motion to dismiss should be denied.

## **MEMORANDUM OF LAW**

The memorandum of law is submitted in support of

Petitioner's Petition pursuant to 28 U.S.C. Section 2241 (a)

As to his unlawful Detention, whether Petitioner's ["27

Months"] of detention without Bond hearing and custody

Hearing is Justified.  Petitioner respectfully Submits the

Motion requesting for immediate release or in alternative

An adequate bond hearing and custody hearing or release on

Supervision.

The petitioner argued that detention of more than ["27"]

Months Without Independent review violates his

Constitutional right to due process. It is to be noted that 8

U.S.C. Section 1226 (C) to authorize Detention only For the

Brief period of time reasonably necessary to Conclude

Removal proceedings. And as authorizing prolonged

Detention Only when accompanied by procedural

Safeguards.

It should be noted that petitioner's detention Pursuant to 8

U.S.C. Section 1226 (C) is improper.

6

## STATUTORY CHALLENGE TO PETITIONER'S DETENTION.

Statutorily, under 8 U.S.C. Section 1231(a)(2), after a

Removal order, deportable aliens must be held in custody for

A period of 90 days while removal arrangement are made

Final with the country of deportability, Under 8 U.S.C.

Section 1231 (a)(6) the statute provides that where removal

Arrangements cannot be finalized within the 90-day-period,

an alien ordered removed who is (1) "inadmissible," or (2)

"Removable" for violating status requirements, entry

Conditions, or the criminal law, or for reasons of security or

Foreign policy, or (3) determined by the Attorney General

To be a risk to the community or unlikely to comply with the

Removal order, may be detained beyond the removal period

And, if released, shall be subject to ["CERTAIN"] terms of

["SUPERVISION"].

In this case at bar, Mr. Obomighie has been detained more

than 90-day removal-period, even he is been detained more than

180 days presumptively reasonable period decided by the

Supreme Court under Zadvydas. Id.

7

## CONSTITUTIONAL CHALLENGE TO PETITIONER'S DETENTION.

Assuming for the sake of argument that petitioner's initial

Detention pursuant To 8 U.S.C. Section 1226 (C) until

December 13th 2010 almost One Year After he was placed

In custody, when the BIA determined that petitioner was

removable. At that point, the authority for petitioner's

Continued detention was transferred to 8 U.S.C. Section

231 (a)(1)(A). Petitioner remained in custody pursuant to 8

U.S.C Section 1226 (C) for an Additional 11 months after the

BIA Determined its decision.

In Zadvydas v. Davis, the United States Supreme

Court upheld the mandatory detention provision of 8 U.S.C.

1231 (a)(6), so long as the detention was limited to "a

Period reasonably necessary to bring about that alien's

Removal from the United States. "533 U.S. at 689.

The Supreme Court recognized six months as a

Presumptively Reasonable period of detention pursuant to

This statute.

8

The respondent assert that Mr. Obomighie has received full
Consideration of these regulatory factors and per regulation
That his custody was reviewed by the DHS, DHS reviewed
Obomighie's custody status on December 15, 2011, Obomighie
was Notified that DHS determined to continue his detention
Pending the Disposition of his federal litigation and was
Notified December 15, 2011, that DHS Determined to continue
his Detention in DHS custody. The respondent conducted the
Petitioner 90-day review well over Six Months, [''THUS''] the
Respondent did not follow the regulations and the petitioner
Must be released on supervision as the respondent stated in
Declaration 16 of its response and opposition.

To date Mr. Obomighie has received no hearing before any
Member panel as to whether his prolonged detention of 27
Months is justified, instead the only Process he has received
Consists of a number of [''Grudging and Perfunctory']
Administrative custody reviews that on information and
Belief, deemed him a Flight risk based on his
Convictions alone. Moreover, because, ICE/DHS Maintains

9

That Mr. Obomighie is subject to mandatory detention he will
Receive no Hearing over his imprisonment during the
Pendency of his removal despite the fact 27 months of his
Detention. (27) Months, (21) months Longer than The
Presumptively reasonable Six-month period identified
By the Supreme Court in Zadvydas v. Davis 533 U.S. 678,
121 S. Ct. 2491, 150 L. Ed. 2d 653 (2000). Mr. Obomighie has
Never received the required 180-Days review under 8 C.F.R.
241.4 (C)(2) No review panel Existed, and no personal
Interview took place. Thus DHS/ICE did not follow its own
Procedures and regulations, as such Mr. Obomighie must be
Released immediately because of ICE'S /DHS failure to
Follow its own regulations. See the respondent answer and
Return, decision to continue detention signed by Mr. Daniel
A. Bible dated December 15 2011.

Mr. Obomighie has been held in custody of U.S. Immigration
And Custom Enforcement [ICE] for more than 27 months
And never Received a hearing to Determine if his prolonged
Detention is justified. In Zadvydas v. Davis, The Supreme

10

Court held that due process Concerns With respect to Indefinite detention required it to construe the statutory Provision regarding detention of non-citizens with a final Order of removal as not allowing detention beyond six Months if there is "No significant likelihood Of Removal in The reasonably foreseeable Future, 533 U.S. 678, 701 (2001). Similarly, in Demore v. Kim, the Supreme Court Upheld mandatory detention of Non-citizens who had Conceded removability and whose Removal Proceedings are still pending under 8 U.S.C. Section 1226 (C), but only for The "brief period Necessary" To complete those proceedings 538 U.S. 510, 513 (2003) (Emphasis Added).

Since Demore, the circuit Courts to address the issue Have held that the prolonged incarceration of non-citizens Pending their removal Proceedings is not authorized, or at Least not authorized in the absence Of a Constitutionally Adequate hearing to determine if such prolonged Detention is justified pending removal proceedings. See Casas-Castrillon v. Dep't of Homeland Security 535 F. 3d

11

942, 950 (9th Cir. 2008); Tijani v. Willis, 430 F. 3d 1241

(9th Cir. 2005); Ly v. Hansen, 351 F. 3d 263 (6th Cir.

2003); Moreover, numerous judges in the District Court

have reached similar conclusions. See D'alessandro v.

Mukasey 628 F. Supp. 2d 368, 2009 Dist Lexis 87056

(WDNY. 2009). See Madrane v. Hogan, 520 F. Supp. 2d 654

(m.D. PA. 2007); Nunez v. U.S. Dep't of Homeland Security,

No 07-1915, 2008 WL 25 93806 (M.D. Pa June 27 2008);

Wilkis v. U.S. Dep't of Homeland Security, No: 07-2171,

2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Victor v.

Mukasey, No: 08-1914 2008 WL 506 1810 (M.D. Pa Nov. 25

2008).

See Haynes v. DHS, This court determined that the

Procedures set forth in 8 C.F.R. Section 241.4 (i) would

Satisfy the demands of due process, because an alien is

Entitled to a records review by a panel and also a personal

interview, if the review panel does not recommend release

Or the Headquarters Post Order Detention Unit ["HQPDU"],

Director does not accept a review panel's recommendation

12

of release. BICE will be afforded sixty days to provide proper

process, and since BICE failed to provide the type of process

Set forth in 8 C.F.R. Section 241.4 (i) Petitioner was to be

Released, subject to pertinent conditions of supervision and

BICE was directed to file a status report.

Thus petitioner Obomighie respectfully requests from this court

for Immediate release because the respondent had not provided

The requisite opportunity for a personal interview in which

The court called ["RUDIMENTARY ELEMENT OF DUE

PROCESS"]. Moreover, a personal meeting with the

Detainee compels the review board to appreciate the

Significance of their decision in a way that completing a

Standardizes worksheet cannot. This helps ensure that

Custody determinations do not become mechanical

Exercises, See Ngo v. INS 192 F. 3d 390, 399 (3rd Cir. 1999)

In this case, the determinations by the reviewing officers

were based primarily on the Petitioner's criminal History. In

Ngo, The Court of Appeals cautioned that "No presume

dangerousness to the community and risk of flight based

13

solely on ["An Alien's"] Past record does not satisfy due

process." Ngo 192 F. 3d at 388-99. A personal interview

Provides the best opportunity for the review board to assess

Whether a past criminal remains a risk to the community.

By not providing ["Mr. OBOMIGHIE"] with his crucial opportunity

To plead his case, ["ICE/DHS"] did not provide Obomighie due

Process because Obomighie has been detained for ["27 Months"]

While pursuing his legal remedies to avoid removal from the

United States, The United States Supreme Court has clearly

Established that an alien is within the protection of the Fifth

Amendment. See Tineo v. Ashcroft, 350 F.3d 382, 398 (3rd

Cir. 2003). Petitioner is entitled to the type of meaningful

review contemplated by 8 C.F.R. Section 241.4 (i). This

includes the opportunity for a personal interview where he

could present his case for conditional release. The DHS/ICE

has not provide Obomighie this opportunity, and his Habeas

Corpus relief should be granted.

## DHS/ICE FAILURE TO COMPLY WITH THEIR OWN REGULATIONS AND FAILURE TO PROVIDE LEGALLY REQUIRED PROCEDURES VIOLATE PETITIONER'S RIGHT TO DUE PROCESS.

The question as to whether Petitioner's detention is in

Violation of The laws of the United States is one for a

Federal Habeas Court to hear, 28 U.S.C. Section 2241.

Accordingly, The Petitioner files the Habeas Corpus Petition,

Pursuant to 28 U.S.C. Sections 2241, Requesting that the

Court order a Hearing on whether the petitioner should

Remain detained and whether such detention is justified for

Over 27 months of detention.

Petitioner clearly has a non-frivolous claim, as set-forth

In the Petition for Writ of Habeas Corpus; numerous Courts

Have granted Relief in similar circumstances, following

Zadvydas, and with guidance from various other Federal

Court decisions, prolong detention without a meaningful

Hearing to determine if such prolonged detention is justified

Is unreasonable. It is clear from all these factors and

Evidence that petitioner has a strong reason to believe that

A travel document has not been issued and there is no

15

Reasonable foreseeable future for His removal and it is clear
That petitioner's detention is not in Accordance with the law
And Zadvydas fully applies to the petitioner.

It is to be noted that (27) months of Obomighie
Incarceration, Obomighie has received (2) detention decisions
In which were entitled "Decision to Continue Detention",
Which the last was issued on December 15 2011 signed by
Mr. Daniel A. Bible.

Under the regulations, the decision to continue Detention
Custody not made by an authorized person under the
Regulations, because after 180-Days, the authority to make
Custody Determinations is vested in the ["EAS"] Executive
Associate Commissioner. See 8 C.F.R. Sections 241.4
(C)(2). (For .... Any Alien who has not been released or
Removed by The expiration of the Three-month period after
The review, all further custody Determinations will be made
By the Executive Associate Commissioner, Acting through
The HQPDU"); 8 C.F.R. Section 241.4 (C)(1)("The Initial
Custody Determination concluded in the 3 months period

16

Immediately following the expiration of the 90-day-removal-
period, Subject to the provisions of paragraph (C)(2) of this
section, will be Made by the district director or director of
The detention and Removal field office having jurisdiction
Over the alien")(Emphasis Added); 8 C.F.R. Section 241.4
(d)(ii).

The Supreme Court has made clear in Zadvydas that
Government Detention violates due process clause unless
Detention is ordered in Criminal Proceedings with adequate
Procedural protections, or where is Special justification, such
As harm threatening mental illness, which Outweigh the
individual's constitutional protected interest in Avoiding

Physical restraint, Zadvydas, 533 U.S. at 699-700. In Zadvydas, the
regulations governing post-removal-order Detention of aliens was amended to comply with due
process Concerns illuminated in Zadvydas. The amended regulations, 8 C.F.R. Sections 242.4 and
8 C.F.R. Section 241.13 were drafted "To reflect the concerns of the Zadvydas court And provide
necessary procedural safeguards to ensure the detention of an alien beyond the removal-period
comports with due process Requirements because these regulations confer important rights upon
Aliens ordered removed. Thus DHS/ICE is bound by these regulations. "Bonito, 547 F. Supp. 2d at
757, as the district

court pointed out in Bonito. The Immigration regulations
involved here do not merely Facilitate internal agency
housekeeping but rather afford Important and Imperative

17

procedural Safeguards to Detainees "Id. (Citing United
States v. Caceras, 440 U.S. 741, 759, 760, 99 S. Ct. 1465,
59 L. Ed. 2d 733 (1979)("This Court Has consistently
demanded Governmental Compliance with regulations
designed to safeguard individual interests Even when the
rules were Not mandated by the Constitution or Federal
Statute")(Citing Inter alia, United States Ex Rel. Accardi v.
Shaughnessy, 347 U.S. 260, 267, 74 S. Ct. 499, 98 L.
Ed.681 (1967).

In Zadvydas Supreme Court held after the (6) months-
Period Detainees need only provide ["Good Reasons To
Believe"] that Removal is not significantly likely in the
Reasonably foreseeable future. ["Zadvydas, 533 U.S. at
701"]. Thus, However, Obomighie respectfully Request this Court
To conduct an expedited hearing on the legality of Obomighie
Unjustified detention of (27) Months. The first six months
Are considered "presumptively reasonable" under
Zadvydas, the last (21) months are not. See Id. The post-
Removal period confinement has thus been more than ["Five

18

Times"] more than of what is considered Presumptively

reasonable. In cases Such as this, Zadvydas instructs

That what counts as the reasonable Foreseeable future

accordingly? diminishes; in effect, it becomes closer in Time.

Given the Protracted Detention thus far. Zadvydas held that

The statute Authorizing Post-Removal-order detention, "read

In light of the Constitution Demands, ''Limits an alien's post-

Removal-period detention to a period reasonably necessary

To bring about that alien's removal from the United States.

533 U.S. at 689. The Supreme Court recognized that a

Period of six Months was a Presumptively reasonable period

Of detention, after which the Alien was entitled to be heard

On whether Release should be ordered. Id at 701.

19

**B.    RESPONDENT'S ARGUMENT LACK OF SETTLED LAW
REGARDING DETENTION OF ALIENS UNDER FINAL ORDER
OF REMOVAL WHILE TRAVEL DOCUMENT IS NOT
AVAILABLE, BUT NIGERIAN CONSULATE POLICY PREVENTS
REMOVAL.**

Respondent argues that of the analysis and theory and

Analysis that was Rejected in several Courts by relying on

Cases, which this Court Has already found to be

Unpersuasive and not on point with the present matter. In

fact, the Court Specifically discussed And rejected Lawrence,

Evangelista, Archibald, Marcelus And Copes in its report.

However, with regard to the Third Circuit Case cited by

respondents, Lawrence, there also were Court-ordered stays

in place but petitioner in this case does Not have a stay order and

was penalized for pursuing Avenues of relief to which he was

legally entitled, and thus Continued detention was the petitioner's

own fault.  See: The conclusion of Honorable Judge Victor E.

Bianchini: I do not find these cases factually apposite; nor are

They binding precedent this Court. Rather; the Court find

Persuasive the reasoning of two cases cited by petitioner Ly v.

Hansen, 351 F. 3d 263, 272 (6th Cir. 2003), and Oyedeji v.

Ashcroft, 332 F. Supp. 2d 747 (M.D. Pa 2004). as noted above, there is no formal stay in place, but even if The Court ultimately were to enter a formal stay, Respondents should not be able to rely on this fact to keep The petitioner in detention for ["27"] months because Appeals and post-conviction petitions for relief are to be Expected as a natural part of the process. An alien who Would not normally be subject to indefinite Detention cannot Be so detained merely because he seeks to explore Avenues Of relief that the law makes available to him. Further, Although an Alien may be responsible for seeking relief, he is not responsible for the Amount of time that such Determinations may take. The mere fact that An Alien has Sought Relief from deportation does not authorize the INS To drag its heels indefinitely in making a decision. The entire process Not merely the Original Deportation hearing is subject to the Constitutional requirement of Reasonability,")(Quoted in Oyedeji 332 F. Supp. 2d 754). With regard to the district Court decision in Copes, Lawrence, and Guner, Respondents here have failed to

21

Provide Pinpoint citations or any Parenthetical explanations
For them. The Reasons for respondent's reliance upon these
Decisions, let alone whether they are apposite to this case is
Not clear from the face of Respondents brief after reviewing
The case, the Court Does not find them to be binding or
Persuasive authority.

The respondents asserts that Mr. Obomighie is properly detained
Pending his deportation based on the review of his records
That was made grudgingly and perfunctorily and claims that
Obomighie is non-cooperative and has not acted in good faith,
["It is false"]. Because Obomighie has been completely
Cooperative with ICE/DHS by contacting Nigerian consulate on
Several occasions, and by sending several letters to his consulate
And the Nigerian consulate has not issue any travel Document
and Will not issue any travel document since the Country is not
Accepting any deportee from United States.

It is to be noted that Mr. Obomighie has made several efforts
To Secure the Travel documents from his consulate which
Prove to fail and therefore his Removal was unlikely, in

Addition to that, Mr. Obomighie has called his consulate on
Several occasions to secure his travel Documents but
Consulate refused to issue the travel documents to any
Nigerian deportee.

The respondent is falsely claiming that ["in the decision
To continue detention of the Respondent memorandum of
Law in opposition to the Petition"] ["As Evidenced by the
Decisions to Continue Detention, Obomighie received
Consideration of the regulatory factors sometime in 2011,
Thus Obomighie Was provided the process to which he was
Entitled. ["This is False"], Obomighie has not received any
Consideration of the regulatory factors, the only process
Obomighie has received was the ["Grudging and Perfunctory"]
Administrative custody reviews that on information and
Belief, deemed Him a flight risk based on his convictions
Alone. Moreover, because, ICE/DHS maintains that,
Mr. Obomighie Is subject to mandatory detention he will receive
no Hearing Over his Imprisonment during the pendency of His
Deportation case of ["27"] months.

The respondent cites Akinwanle as justification to denied

The Petitioner's motions without considering the fact that

Akinwanle's petition was prematurely filed in this court

Because Akinwanle filed his petition when he was detained

For four months not Six months presumptively reasonable,

And Akinwanle's petition was denied without prejudice.

**SEE GENERALLY: THE ATTACHED EXHIBIT TO PROVE THE PETITIONER HAS FULLY COOPERATED WITH ICE/DHS THEREFORE; THE RESPONDENT'S CLAIM OF NON-COMPLIANCE IS ABSOLUTELY FALSE AND UNSUBSTANTIATED BY ANY SUPPORTIVE EVIDENCE.**

# EXHIBIT ''A'' THRU ''D''.

# SEE ALSO EXHIBIT ''1''AND ''2''

In this case at bar, Obomighie has been detained for ["27"] Months, ["21"] Months more than Six months presumptively Reasonable under Zadvydas by the Supreme Court. Id.

Taken together all this circumstances, it is unlikely That Mr. Obomighie Removal is not likely foreseeable and It is Respectfully submitted that this Case should be Recommended with instructions to order DHS/ICE to release The petitioner and oversight by this court subject to Supervision immediately because of their failure to follow Its own Regulations and Non-Compliance with the Custody Review regulations, it is also to be noted that Obomighie Has resided in the U.S. for nearly 27 years and has along record Of appearing at immigration court hearings and would not Represent a flight risk, and Obomighie criminal record does not Render him a danger to the community because he has no recent convictions.

Respectfully Submitted
Kester Obomighie
Kester Obomighie
Etowah County Detention Facility
827 Forrest Avenue

# CERTIFICATE OF SERVICE

I Kester Obomighie, (Prose) hereby affirm under the penalty of perjury that the following is true, On the 18th of January 2012 served the Petition for a Writ of Habeas Corpus pursuant to Section 2241 of the Title 28 of the United States Code, Memorandum of Law and Answer of Returns with Exhibits to the Clerk of the Court via U.S. Postal Service, by first class mail and deposited it in an Institutional official mail room addressed to:

UNITED STATES ATTORNEY'S OFFICE
NORTHERN DISTRICT OF ALABAMA
1801 4th Avenue North
Birmingham, Alabama. 35203.

Respectfully Submitted

Kester Obomighie
Etowah County Detention Facility
827 Forrest Avenue
Gadsden, AL. 35901

SWORN TO BEFORE ME THIS
18th DAY OF JANUARY 2012

NOTARY PUBLIC SEAL.

MY COMMISSION EXPIRES APRIL 27, 2014

U.S. Department of Homeland Security
Case 4:11-cv-02678-WMA-RRA Document 8 Filed 01/23/12 Page 28 of 51
Immigration and Customs Enforcement
Warning for Failure to Depart

| Name: | District Office: | File A#: |
|---|---|---|
| OBOMIGHIE, Kester | New Orleans Field Office | 029 697 189 |

Section 243(a) of the Immigration and Nationality Act provides, in part, that:

Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 237(a) who--

(A) willfully fails or refuses to depart from the United States within a period of 90 days* from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court,

(B) willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,

(C) connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, or

(D) willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,

shall be fined under title 18, United States Code, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 237(a)), or both.

Nothing in this section shall make it a violation to take proper steps for the purpose of securing cancellation of or exemption from such order of removal or for the purpose of securing the alien's release from incarceration or custody.

Any action the Immigration and Customs Enforcement Service may take to obtain a travel document for your departure or to remove you will *NOT* relieve you of the liability for compliance with the provisions of law referred to in the first paragraph above.

\* Section 241(a)(1)(C) provides for the extension of the statutory removal period if the alien refuses, during the removal period, to make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires or acts to prevent the alien's removal subject to an order of removal.

| Date Order Final: | Ordered Removed under Section: |
|---|---|
| April 26, 2011 / 11-8-2004 / K·O | |

| Record of Service (Check method used) | |
|---|---|

| ( ) Record of Personal Service | |
|---|---|
| Served By: (Print Name and Title of Officer) | Date: |
| Perry Zaner          Deportation Officer | 12/07/11 |
| Officer's Signature: | Location of Service: |
| | Gadsden, AL |
| Served On: (Alien's Signature) | Date: |

| ( ) Warning administered in Court (Copy of order attached) | Record of Personal Service (Cont.) |
|---|---|
| ( ) Certified Mail Service | Fingerprint of Alien (Specify finger used) |
| Attach certified mail receipts here. | |
| | Right Index |

Form I-229(a)
(Revised 12/04/02)

**U.S. Department of Homeland Security**
Immigration and Customs Enforcement

**Warning for Failure to Depart**

| Name: | Field Office: | File #: |
|---|---|---|
| OBOMIGHIE, Kester | NOL/ETW | A29 697 189 |

Section 243(a) of the Immigration and Nationality Act provides, in part, that:

> Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 237(a) who--
>
> > (A)   willfully fails or refuses to depart from the United States within a period of 90 days* from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court,
> >
> > (B)   willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,
> >
> > (C)   connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, or
> >
> > (D)   willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,
>
> shall be fined under title 18, United States Code, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 237(a)), or both.

Nothing in this section shall make it a violation to take proper steps for the purpose of securing cancellation of or exemption from such order of removal or for the purpose of securing the alien's release from incarceration or custody.

Any action Immigration and Customs Enforcement may take to obtain a travel document for your departure or to remove you will *NOT* relieve you of the liability for compliance with the provisions of law referred to in the first paragraph above.

\*       Section 241(a)(1)(C) provides for the extension of the statutory removal period if the alien refuses, during the removal period, to make application in good faith, for a travel or other document necessary for the alien's removal or departure or conspires or acts to prevent the alien's removal subject to an order of removal.

| Date Order Final: | Ordered Removed under Section: |
|---|---|
| 11/08/2004 | 241 |

<table>
<tr><td colspan="3" align="center"><strong>Record of Service</strong><br>(Check method used)</td></tr>
</table>

|  (     )   | **Record of Personal Service** | |
|---|---|---|
| Served By: (Print Name and Title of Officer) | | Date: |
| *Matthew F. Lenze - IEA* | | *10-12-11* |
| Officer's Signature: | Location of Service: | |
| *Matth F Lee   IEA* | *Gadsden, AL* | |
| Served On: (Alien's Signature) | | Date: |
| *Kester Obomighie* | | *10-12-11* |

| (     ) **Warning administered in Court** (Copy of order attached) | **Record of Personal Service (Cont.)** |
|---|---|
| (     ) **Certified Mail Service** | Fingerprint of Alien  (Specify finger used) |

**Attach certified mail receipts here.**

Form I-229(a)
(Revised 12/04/02)

# INSTRUCTION SHEET TO DETAINEE REGARDING REQUIREMENT TO ASSIST IN REMOVAL

The following is a list of things you are required to complete within 30 days of receiving this form, in order comply with your obligation to assist in obtaining a travel document:

*Mandatory requirements will be checked off by the ICE officer depending on the facts of each case. Failure to comply or provide sufficient evidence of your inability to comply, may result in the extension of the removal period and subject you to further detention. In addition, you may be subject to criminal prosecution. If you need assistance in complying with any of the requirements, please contact a Deportation Officer.*

 X  Submit passports (current and expired) to the ICE. If you have a copy of your passport, you are to submit it.

 X  Apply for a travel document/passport from your embassy or consulate, or directly from your government in your native country, or any other embassy or consulate of your native country in another country.

 X  Comply with all instructions from all embassies or consulates requiring completion of documentation for issuance of a travel document.

 X  Submit to the ICE birth certificates, national identification cards, and any other document issued by a foreign government indicating your citizenship, nationality, place of birth, and place of residence prior to entering the United States.

 X  Provide names and addresses of family and friends residing in the United States and request that they contact your embassy or consulate in the United States, in order to facilitate the issuance of a travel document.

 X  Provide names and addresses of family and friends residing in your country of citizenship and request family and friends residing abroad contact your government in reference to issuing a travel document.

 X  You are required to take measures to request reinstatement of your previous nationality, register as required, or take any other action that will ensure the issuance of a travel document and your removal from the United States.

 X  Provide ICE with written copies of requests to embassies or consulates requesting issuance of a travel document.

 X  Provide ICE with written copies of responses from embassies or consulates regarding your requests.

 X  Solicit permission from another country, which may be able to accept you, to enter that country to effect your removal from the United States.

 ___ Other: _____.

Alien's Signature _____     A# _029-697-189._

Served by  _Matthew F. Lenze   10-12-11_     _Gadsden, AL_
      Officer's Name     Date          Location

**To be served with I-229 (a) no later than 30 days after the final order**

(Rev. 10/24/02)

*ICE/Detention & Removal Operations*
*Etowah county detention center*

## DETAINEE REQUEST WORKSHEET

Detainee's Full Name: KESTER. T. OROMIGHE  Nationality: NIGERIA
Required                                        (Required)
Immigration Number: A 029 - 697 - 189  ; Housing Unit/Cell Number: (10) 1054
(Required)                                      (Required)

Type of Request: ____ Property/Money Issue __✓__ Question concerning your case
(Mark One)                                  (ICE Officers/Agents are NOT allowed to provide legal advice)
_____ Question concerning the detention facility
(NOTE: Prior to filing a question/complaint with ICE, you should file a complaint/grievance with the facility using forms provided by the jail)
Detainee's Signature: _____ ; Today's Date: NOV 6, 2011

ATTENTION: Refer to the forms provided to you by ICE or CBP to determine your type of case (listed below) and immigration number. If you do not provide an immigration number (A#) above, you will not receive a reply. (Anonymous requests or questions will not be accepted. Questions must be specific. Comments such as, "I want to see an officer" will not be addressed)

1) Notice to Appear (NTA), Form I-862-An Immigration Judge will decide your case and the immigration court (EOIR) will schedule your case, not ICE. This may take several weeks Be patient

2) Notice of Intent to Issue a Final Administrative Removal Order, Form I-851-You are unlawfully present in the United States and have been convicted of an aggravated felony, as defined under the immigration laws. You are not entitled to a hearing before an Immigration Judge. Refer to Form I-851 for more information.

3) Notice of Intent/Decision to Reinstate Prior Order, Form I-871-You are unlawfully present in the United States and were previously deported/removed. The previous Order of Removal/Deportation has been reinstated. You are not entitled to a hearing before an Immigration Judge. Refer to Form I-871 for more information.

4) Request for Travel Documents-Request for travel documents will be made on issuance of a final order. Any documents providing proof of citizenship should be forwarded to the immigration officer as son as posible. This will expedite the issuance of your travel document. The time needed to obtain a travel document varies with each country. You will be contacted if additional information is necessary. You may contact your embassy for further information. Use call list in the unit.

5) Dates of Removal from the United States-Due to security concerns, ICE is not permitted to notify detainees about dates of removal/deportation. Requests for dates of removal/deportation will not be addressed.

6) Representation-Information about the status of your immigration case should be discussed with your attorney, not ICE.

WRITE YOUR SPECIFIC REQUEST or CONCERN HERE:
BASED ON YOUR REPLY REGARDING my LAST REQUEST WHICH IS ATTACHED HOW IS
iT POSSIBLE THAT my TIME TOWARDS my REMOVAL PERIOD THAT I CE HAS TO FACILITATE
my REMOVAL FROM THE U.S COME TO A HALT. BASED ON BIA RECEIPT FOR
MOTION WHICH YOU WILL FIND ATTACHED AS WELL my TIME SHOULD BE STILL
RUNNING BECAUSE MOTION TO ~~RECONSIDER~~ SHOULD NOT STOP my TIME FROM RUNNING
(Attach additional pages, if necessary) BEEN DEPORTED SINCE 2004.

CASE OFFICER RESPONSE: Kester, True if we had a TD For you you
can be removed. However, when you appeal your case to the BIA The
clock stop's until the BIA has ruled. In Addition you case is
a Failure to comply as you refused to Provide plan. That also stop's
the clock for further Reviews.
Case Officer Signature: _____  Date Request Received: 11/6/2011

Date of Response: _____  Date Response Provided to Detainee: NOV 09 2011
Your case will be reopened Once the BIA Board decides
on your NTA.

*ICE/Detention & Removal Operations*
*Etowah county detention center*

ATT: ZANER

## DETAINEE REQUEST WORKSHEET

Detainee's Full Name: KESTER OROMIGHIE  Nationality: NIGERIA
(Required)                                                    (Required)
Immigration Number: A 029 - 69.7 -189   Housing Unit/Cell Number: (10) 1054
(Required)                                                    (Required)

Type of Request: ___ Property/Money Issue ✗ Question concerning your case
(Mark One)                          _(ICE Officers/Agents are NOT allowed to provide legal advice)
___ Question concerning the detention facility
(NOTE: Prior to filing a question/complaint with ICE, you should file a complaint/grievance with the facility using forms provided by the jail)
Detainee's Signature: _____ Today's Date: 12-7-2011

ATTENTION: Refer to the forms provided to you by ICE or CBP to determine your type of case (listed below) and immigration number. If you do not provide an immigration number ('A#') above, you will not receive a reply. (Anonymous requests or questions will not be accepted. Questions must be specific. Comments such as, "I want to see an officer" will not be addressed).

1) Notice to Appear (NTA), Form I-862-An Immigration Judge will decide your case and the immigration court (EOIR) will schedule your case, not ICE. This may take several weeks. Be patient

2) Notice of Intent to Issue a Final Administrative Removal Order, Form I-851-You are unlawfully present in the United States and have been convicted of an aggravated felony, as defined under the immigration laws. You are not entitled to a hearing before an Immigration Judge. Refer to Form I-851 for more information.

3) Notice of Intent/Decision to Reinstate Prior Order, Form I-871-You are unlawfully present in the United States and were previously deported/removed. The previous Order of Removal/Deportation has been reinstated. You are not entitled to a hearing before an Immigration Judge. Refer to Form I-871 for more information.

4) Request for Travel Documents-Request for travel documents will be made on issuance of a final order. Any documents providing proof of citizenship should be forwarded to the immigration officer as son as posible. This will expedite the issuance of your travel document. The time needed to obtain a travel document varies with each country. You will be contacted if additional information is necessary. You may contact your embassy for further information. Use call list in the unit.

5) Dates of Removal from the United States-Due to security concerns, ICE is not permitted to notify detainees about dates of removal/deportation. Requests for dates of removal/deportation will not be addressed.

6) Representation-Information about the status of your immigration case should be discussed with your attorney, not ICE.

WRITE YOUR SPECIFIC REQUEST or CONCERN HERE:
ATT: ZANER, Please I need a copy of the warning for failure
to depart and Instruction Sheet to detainee Regarding
requirement to assist in Removal that I Sign today
on 12-7-2011.
                              Thank you.
(Attach additional pages, if necessary)

CASE OFFICER RESPONSE: ~~Headquest that no~~

Case Officer Signature: _____   Date Request Received: **DEC 08 2011**

Date of Response: _____   Date Response Provided to Detainee: _____

ICE/Detention & Removal Operations
Etowah county detention center

## DETAINEE REQUEST WORKSHEET

Detainee's Full Name: KESTER OBOMICHIE   Nationality: Nigeria
*Required*                                                        *(Required)*

Immigration Number: A 029 - 097 - 189  ;  Housing Unit/Cell Number: (10) 1054
*Required*                                                        *(Required)*

Type of Request: ____ Property/Money Issue  ✓ Question concerning your case
*(Mark One)*                                          *(ICE Officers/Agents are NOT allowed to provide legal advice)*

____*Question concerning the detention facility

*(NOTE: Prior to filing a question/complaint with ICE, you should file a complaint/grievance with the facility using forms provided by the jail)*

Detainee's Signature: _____  ;  Today's Date: OCT 25, 2011

ATTENTION: Refer to the forms provided to you by ICE or CBP to determine your type of case (listed below) and immigration number. If you do not provide an immigration number (A#) above, you will not receive a reply. (Anonymous requests or questions will not be accepted. Questions must be specific. Comments such as, "I want to see an officer" will not be addressed).

1) Notice to Appear (NTA), Form I-862-An Immigration Judge will decide your case and the immigration court (EOIR) will schedule your case, not ICE. This may take several weeks Be patient

2) Notice of Intent to Issue a Final Administrative Removal Order, Form I-851-You are unlawfully present in the United States and have been convicted of an aggravated felony, as defined under the immigration laws. You are not entitled to a hearing before an Immigration Judge. Refer to Form I-851 for more information.

3) Notice of Intent/Decision to Reinstate Prior Order, Form I-871-You are unlawfully present in the United States and were previously deported/removed. The previous Order of Removal/Deportation has been reinstated. You are not entitled to a hearing before an Immigration Judge. Refer to Form I-871 for more information.

4) Request for Travel Documents-Request for travel documents will be made on issuance of a final order. Any documents providing proof of citizenship should be forwarded to the immigration officer as son as posible. This will expedite the issuance of your travel document. The time needed to obtain a travel document varies with each country. You will be contacted if additional information is necessary. You may contact your embassy for further information. Use call list in the unit.

5) Dates of Removal from the United States-Due to security concerns, ICE is not permitted to notify detainees about dates of removal/deportation. Requests for dates of removal/deportation will not be addressed.

6) Representation-Information about the status of your immigration case should be discussed with your attorney, not ICE.

WRITE YOUR SPECIFIC REQUEST or CONCERN HERE:

MY KESTER OBIMICHIE am currently in Custody in ETOWAH County Jail Since June 17, 2011 and I had Sign my warning for failure to depart, also with my Cell mate willis ofori sign too, but he got his 90 day Custody Review and I never got my, so I am writing you regarding my 90 day Custody Review too because we came together
*(Attach additional pages, if necessary)* at Same time from maryland on June 17 C
Thank You

CASE OFFICER RESPONSE:

Kester, Removal Efforts will continue you have a case with the BIA that is pending. He'clogle with Start again when the BIA dismiss your case.

Case Officer Signature: _____        Date Request Received: OCT 26 2011
OCT 2 8 2011                                               OCT 2 6 2011
Date of Response: _____        Date Response Provided to Detainee: _____

EXHIBIT B

---

## DETAINEE REQUEST WORKSHEET

Detainee's Full Name: KESTER L ChumiGwE   Nationality: Nigeria

Immigration Number: AC29-691-189   Housing Unit/Cell Number: 10)1054

Type of Request:  ____ Property/Money Issue   ____ Question concerning your case
(Mark One)                                      (ICE Officers/Agents are NOT allowed to provide legal advice)

✓ Question concerning the detention facility
(NOTE): Prior to filing a question/complaint with ICE you should file a complaint/grievance with the facility using forms provided by the jail.

Detainee's Signature:                                    Today's Date:

### ICE/Detention & Removal Operations
### Etowah County Detention Center

**ATTENTION:** Refer to the form provided to you by ICE or CBP to determine your case (listed below) and immigration number. If you do not provide an immigartion number (A#) above, you **will not** receive a reply. (Anonymous requests or questions will not be accepted. Questions must be specific. Comments such as, "I want to see an Officer" **will not** be addressed).

1.)  **Notice to Appear (NTA), Form I-862:**  An immigration Judge will decide your case and the immigration court(EOIR) will schedule your case, **not** ICE. This may take several weeks **be patient**.

2.)  **Notice of Intent to Issue a Final Administrative Removal Order, Form I-851:**  You are unlawfully present in the United States and have been convicted of an aggravated felony, as defined under the immigration laws.  You are **not** entitled to a hearing before an immigration Judge.  Refer to Form I-851 for more information.

3.)  **Notice of Intent/Decision to Reinstate Prior Order, Form I-871:**  You are unlawfully present in the United States and were previously deported/removed. The previous Order of Removal/Deportation has been reinstated. You are **not** entitled to a hearing before an immigation Judge.  Refer to Form I-871 for more information.

4.)  **Request for Travel Documents:** Request for travel documents will be made on issuance of a final order. Any documents providing proof of citizenship should be forwarded to the immigation officer as soon as possible. This will expedite the issuance of your travel document. The time needed to obtain a travel documents varies with each country. You will be contacted if additional information is necessary. You may contact your emabassy for further information. Use call list in the unit.

5.)  **Dates of Removal from the United States:**  Due to security concerns, ICE is not permitted to notify detainees about dates of removal/deportation. Requests for dates of removal/deportation will not be addressed.

6.)  **Representation:**  Information about the status of your immigration case should be discussed with your attorney, **not** ICE.

---

## WRITE YOUR SPECIFIC REQUEST OR CONCERN HERE:

I KESTER CHIMIGWE Currently in Custody in ETowAn county Jail Since June 17, 2011 and I have net Spoken to any deportation officer about my Case, I am Just being held in Custody. I will like to know what is going on with my case. Please Can I Speak to my deportation officer about my Case.

Thank You.

*(Attach additional pages if necessary)*

CASE OFFICER RESPONSE: I will Review and call to Consulate for you TD. I will come to See you

SEP 2 8 2011

Case officer Signature:                         Date Request Received: _____

Date of Response: _____   SEP 2 8 2011   SEP 2 8 2011 Response provided to Detainee: _____

EXHIBIT 1

---

**KEVIN <u>BONITTO</u>, Petitioner, v. BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT, Respondent.**
**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION**
**547 F. Supp. 2d 747;2008 U.S. Dist. LEXIS 32680**
**CIVIL NO. B-07-226**
**April 2, 2008, Decided**

---

**Editorial Information: Subsequent History**

**Counsel**                                    Kevin **Bonitto**, Petitioner, Pro se, Los Fresnos, TX.
                                    For Bureau Immigration and Customs Enforcement, Respondent:
                    Rene Carlo Benavides, LEAD ATTORNEY, US Attorney's Office, McAllen, TX.
**Judges:** Felix Recio, United States Magistrate Judge.

**Opinion**

**Opinion by:**          Felix Recio

**Opinion**

{547 F. Supp. 2d 749} <u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

Before the Court is Kevin Bonitto's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc.1). Respondent has filed a Motion to Dismiss, which will also be considered herein. (Doc. 22). For the following reasons, Petitioner's habeas petition should be GRANTED CONDITIONALLY and Respondent's Motion to Dismiss should be DENIED.

**BACKGROUND**

Petitioner Kevin **Bonitto** is a native and citizen of the Jamaica. He is currently detained at the Port Isabel Detention Center in Los Fresnos, Texas pending his removal from the United States. He originally entered this country at age twelve on March 13, 1996, as a lawful permanent resident. **Bonitto** has since been ordered removed by decision of an immigration judge ("IJ") for having been convicted of a drug trafficking crime and an aggravated felony. His removal period under 8 U.S.C. § 1231(a)(1)(B) began on June 21, 2007.

On October 11, 2001, **Bonitto** was convicted of the criminal sale of a controlled substance near school grounds and sentenced to serve six years and two months in prison. On June 21, 2001, DHS encountered **Bonitto** at the Green Correctional facility in New York City and placed him in DHS custody at the Buffalo Detention Center in order to prosecute his immigration charges. A Notice to Appear charged **Bonitto** as removable on March 15, 2002, and on November 6, 2002, an IJ ordered **Bonitto** removed to Jamaica. On March 6, 2003, the Board of Immigration Appeals ("BIA") denied his appeal and summarily affirmed the IJ's decision.

---

{547 F. Supp. 2d 750} On June 21, 2007, **Bonitto** was released from the custody of the New York Department of Correctional Services into ICE custody and was thereafter detained pending his removal to Jamaica pursuant to 8 U.S.C. § 1231. 1 On November 23, 2007, Bonitto's deportation officer completed a file review, a Post Order Custody Review ("POCR") worksheet, and conducted a personal interview with **Bonitto**. In the POCR worksheet, the officer checked the box for "no" in response to the question regarding whether **Bonitto** appeared to meet any of the criteria for continued detention notwithstanding the likelihood of removal, including whether he was determined to be "specially dangerous." *See* Respondent's Mot. to Dismiss, Attachment 1, at 7. (Doc. 22). However, in the document entitled "Officer Comments/Analysis and Recommendation" the same officer stated that he believes **Bonitto** will pose a danger to society if released and recommends Bonitto's continued detention.

On December 3, 2007, the Field Office Director agreed with the deportation officer and determined **Bonitto** should continue in custody without comment. On the same day **Bonitto** was served with a document entitled "Decision to Continue Detention." The document advised **Bonitto** that ICE had decided to continue his detention, but did not state any grounds for this decision. The document also stated that if **Bonitto** was not released by December 17, 2007, jurisdiction of Bonitto's custody decisions would be transferred to the Headquarters Post Order Detention Unit ("HQPDU").

Petitioner filed this habeas action on December 27, 2007, alleging that he had been in post-removal detention for more than the six-month presumptively reasonable period and that there was no significant likelihood of removal in the reasonably foreseeable future. ICE responded to Bonitto's habeas petition on March 7, 2008 with a motion to dismiss, and included in its response records of the above-detailed custody determinations. ICE's motion to dismiss does not mention a 180--day review by HQPDU nor does it contain records of such a review. Based on the record before it, the Court assumes **Bonitto** has yet to receive his 180-day custody review.

## ALLEGATIONS

In his petition, **Bonitto** challenges his detention on three grounds. He alleges that he is being unlawfully detained because there is no significant likelihood of his removal to Jamaica in the reasonably foreseeable future. He first alleges his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). He alleges that he has been in post-removal order detention for more than six months, and that his continued deportation violates the "presumptively reasonable" period set forth by the Supreme Court for post-removal detention in *Zadvydas.* Secondly, he alleges that his post-removal detention violates his Constitutional right to substantive due process. Lastly, he alleges that his post-removal detention violates his Constitutional right to procedural due process.

To support his claim that there is no significant likelihood of removal in the reasonably foreseeable future and that he should be released, **Bonitto** alleges that he has fully cooperated with deportation officials. He claims he has spoken to the {547 F. Supp. 2d 751} Jamaican consulate and requested travel documents, given ICE his passport and LPR card, willfully participated in all requested interviews by ICE officials, and completed all necessary forms to facilitate his removal. He also claims that ICE is "aware" that his return to Jamaica cannot be effectuated in the reasonably foreseeable future. *See* Pet's 2241 Mot., at 5-6. (Doc. 1).

He requests to be released subject to supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. He also prays for an injunction against his further unlawful detention, attorney's fees and costs under the Equal Access to Justice Act, and any further relief the Court deems just and proper. *Id.* at 18-19.

## PROPER RESPONDENT

Petitioner has named Immigration and Customs Enforcement ("ICE") as the respondent to his petition. The United States Supreme Court has made clear that for purposes of a habeas corpus petition under 2241, the only proper respondent is the immediate custodian of the petitioner who has the ability to produce the petitioner before the Court. *See Rumsfeld v. Padilla,* 542 U.S. 426, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004). The Court notes that the proper Respondent is the warden of the facility at which Petitioner is detained.

## DISCUSSION

### I. Jurisdiction Under Section 2241

A petition under § 2241 is the proper vehicle for a petitioner to use when he seeks to challenge the legality and constitutionality of post-removal-period detention. *See Zadvydas v. Davis,* 533 U.S. 678, 687-688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). The district where the petitioner is detained "is the only district that has jurisdiction to entertain a defendant's § 2241 petition." *Lee v. Wetzel,* 244 F. 3d 370, 373-75 (5th Cir. 2001). Bonitto's petition complains of his detention when removal is no longer reasonably foreseeable, and **Bonitto** is detained in Port Isabel within the Southern District of Texas. Therefore, the district court in Brownsville has jurisdiction over these allegations.

### II. Federal Law on Post-Removal Detention.

#### a. Statutory Framework and Constitutional Constraints.

The statutory provision that governs the Court's review in this case is 8 U.S.C. § 1231. Under § 1231(a)(1)(A), when an alien is ordered removed the Attorney General "shall remove the alien from the United States within a period of 90 days." 2 During this 90-day removal period, the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") 3 are required to detain {**547 F. Supp. 2d 752**} the alien. Upon the conclusion of the 90-day removal period the statute allows for either continued detention or release under supervision. 8 U.S.C. § 1231(a). Although the statute gives the Attorney General the discretion to continue detaining an alien in this situation, this detention is subject to the limits of the Fifth Amendment's Due Process clause. *See Zadvydas,* 533 U.S. at 690-692.

In *Zadvydas v. Davis* the Supreme Court interpreted 1231(a)(6), the provision that allows for detention beyond the 90-day removal period, to limit post-removal-period detention to a period "reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, if removal is no longer reasonably foreseeable, continued detention is not authorized by the statute. *Id.* at 699. Under *Zadvydas,* if an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future in a habeas corpus petition, the Government must respond with evidence sufficient to rebut that showing. *Id.* at 701.

An alien who refuses to comply with the government's removal efforts may be detained indefinitely. *See* 8 U.S.C. § 1253(a). The government must warn such aliens regularly of the consequences of their non-compliance, but if an alien refuses to comply the government is not required to review that alien's continued detention under the procedures outlined below.

#### b. The Implementing Regulations and Custody Review Process.

#### i. The 90-day POCR.

After the Supreme Court decided *Zadvydas,* DHS promulgated regulations to implement the newly established constitutional constraints. *See* 8 C.F.R. § 241.4; 66 Fed. Reg. 56967, 56969 (Nov. 21, 2001) (explaining the *Zadvydas* decision and stating that the new regulations were issued to provide a process for DHS to determine whether there is a significant likelihood of removal in the reasonably

foreseeable future). Under the regulations, the district director is required to conduct a post-order custody review ("POCR") before the 90-day removal period expires if the alien's removal cannot be accomplished during the removal period. *See* 8 C.F.R. § 241.4(k)(1)(i). In conducting the POCR, officials must review the alien's records and any and all documents submitted by the alien and must inform the alien of the decision. *See* 8 C.F.R. § 241.4(h)(1).

The 90-day POCR essentially considers three criteria: (1) flight risk; (2) danger to the community; and (3) likelihood of obtaining travel documents. *See* 8 C.F.R. § 241.4(e)&(f). The district director or Director of the Detention and Removal Field Office decides whether the alien is released from custody or continued in detention pending removal or further review of his or her custody status. 8 C.F.R. § 241.4(k)(1)(i).

### ii. The 180-day POCR.

If the alien is not released or removed at the time of the initial POCR and has cooperated with the removal process, he or she must receive a second review three months later, or after 180 days have passed from the date the removal period began. 8 C.F.R. § 241.4(k)(2)(ii). The 180-day review is conducted by the HQPDU and considers whether there is a significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13. If an alien is not likely to be removed in {547 F. Supp. 2d 753} the reasonably foreseeable future he or she may still be detained if the alien meets one of four "special circumstance" criteria. 4 *See* 8 C.F.R. § 241.14. The 180-day determination looks at whether it is reasonable to believe that travel documents can be obtained, given the federal government's efforts, the receiving country's willingness to facilitate the process, and other factors. *See* 8 C.F.R. § 241.4(e)&(f). There is no specific time-period for removal when the DHS is actively attempting to remove the alien, however the government's prospects for a timely removal must be reasonable under the circumstances in order to continue detention beyond 180-days.

If the HQPDU determines that removal is not likely in the foreseeable future, the alien must be released unless his continued detention is justified by a special circumstance. A court-granted stay of removal or an alien's failure to comply with removal efforts can extend detention indefinitely and remove an alien from the POCR review process.

### iii. Request for Release by an Alien under Section 241.13.

Aside from the required review procedures outlined in § 241.4, an alien may also request a determination from the Headquarters Post-Order Detention Unit of whether there is a significant likelihood of removal in the reasonably foreseeable future at anytime after a removal order becomes final. *See* 8 C.F.R. § 241.13(d)(3). The alien must submit a written request for release and show that there is no significant likelihood of removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1). If an alien submits a request before the expiration of the removal period, the HQPDU may postpone its consideration of the request until the removal period expires. *See* 8 C.F.R. § 241.13(d)(3).

In deciding whether an alien should be released under § 241.13, the regulations provide HQPDU will consider the history of the alien's efforts to comply with the order of removal, the history of DHS's efforts to remove aliens to the country in question, including the ongoing nature of DHS's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. *See* 8 C.F.R. § 241.13(f).

If the HQPDU denies the alien's request for release under § 241.13, the alien is still entitled to the normal § 241.4 review procedures outlined above. As under the normal custody review process, DHS may continue detaining an alien who has requested release under § 241.13 if it determines there are special circumstances justifying detention notwithstanding the likelihood of removal in the reasonably

foreseeable future. *See* 8 C.F.R. § 241.13(e)(6).

{547 F. Supp. 2d 754} *III. Legal Analysis of Petitioner Bonitto's Post-Removal-Order Detention.*

### a. Petitioner has not satisfied his burden of proof under Zadvydas and his habeas petition cannot succeed on this ground.

Respondent argues that Bonitto's claims are "not ripe for review" because "it is likely DHS will be able to obtain travel documents in the foreseeable future." *See* Mot. to Dismiss at 3. (Doc. 22). Respondent offers no legal argument or analysis of why Bonitto's claims are not ripe for review, and the Court is left to speculate as to what Respondent may have meant. However, owing to a detailed and lengthy examination of the law on post-removal-order detention, the Court has become well-versed in the arguments ICE officials customarily make in these cases. If Respondent had elaborated, the Court can suppose it would argue that Petitioner has not met his burden of proof under *Zadvydas.*

The Supreme Court in *Zadvydas* placed the initial burden of proof on the alien to provide "good reason to believe" that there is no likelihood of removal in the reasonably foreseeable future. *See Zadvydas,* 533 U.S. at 701. The Fifth Circuit reiterated this in *Andrade v. Gonzales* when it found a habeas claim under *Zadvydas* without merit because it "offered nothing beyond conclusory statements" suggesting that removal was not foreseeable. 459 F.3d 538, 543-544 (5th Cir. 2006). Therefore, under *Zadvydas* and *Andrade,* ICE may detain an alien beyond the removal period *until* it has been shown that there is no significant likelihood of removal within the reasonably foreseeable future. *Id.*

Whether **Bonitto** has shown "good reason" to believe that there is no significant likelihood of removal in the reasonably foreseeable future is difficult to determine based on the record before the Court. The Court notes that **Bonitto** does point to *some* evidence that his removal is unlikely, including evidence of his full cooperation with ICE authorities to aid in his removal and the expiration of the 6-month presumptively reasonable period. The Respondent does not rebut this evidence nor mention any evidence to support its bald assertion that "it is likely DHS will be able to obtain travel documents in the foreseeable future." *See* Pet's 2241 Mot., at 3.

Despite the lackluster effort by Respondent 5 to show this Court why the present § 2241 action should be dismissed, the Court finds that based on the current record, **Bonitto** has not alleged sufficient evidence as required for the burden to shift to the DHS under *Zadvydas.* However, the Court finds it prudent to note that Petitioner **Bonitto** is proceeding *pro se* and reminds Respondent of a federal court's duty to liberally construe habeas petitions filed by *pro se* petitioners. 6 Nonetheless, {547 F. Supp. 2d 755} even a liberal reading of Bonitto's petition cannot shift the burden of proof with nothing more on the record. 7 Bonitto's claim under *Zadvydas* cannot succeed at this juncture.

### b. Respondent's failure to comply with the review procedures outlined in the applicable regulations violates Petitioner's procedural due process rights.

#### i. Substantive Versus Procedural Due Process Analysis.

On the outset the Court determines that the rights involved in this habeas corpus action are procedural due process rights, despite Petitioner's allegations of both substantive and procedural due process violations. The substantive component of the Fifth Amendment's Due Process clause bars certain offensive governmental actions "regardless of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). In substantive due process analysis the "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). **Bonitto** does not allege any conduct by DHS that is egregious or that would shock the conscious, and nothing

in the record suggests such conduct.

The matter is appropriately analyzed under procedural due process standards, which require governmental entities to provide an individual procedural rights before it may deprive him or her of life, liberty or property. *See Mathews v. Eldridge,* 424 U.S. 319, 332-333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Traditionally, procedural due process protects an individual's right to be heard "at a meaningful time and in meaningful manner." *Id.* at 333 (internal quotations omitted). It is such procedural rights that are at issue in the current habeas petition.

### ii. Judicial Review of Executive Agency Non-Compliance with Administrative Regulations under the Due Process Clause.

It is central to our concept of due process that government officials, no less than private citizens, are bound by rules of law. The Fifth Circuit has held that it is a denial of procedural due process for any government agency to fail to follow its own regulations providing procedural safeguards to persons involved in adjudicative processes before it. *Government of Canal Zone v. Brooks,* 427 F.2d 346, 347 (5th {**547 F. Supp. 2d 756}** Cir. 1970). Where individual interests are implicated, the Due Process clause requires than an executive agency adhere to the standards by which it professes its action to be judged. *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S. Ct. 968, 3 L. Ed. 2d 1012 (1959); *see also United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S. Ct. 499, 98 L. Ed. 681 (1954); *Bridges v. Wixon,* 326 U.S. 135, 65 S. Ct. 1443, 89 L. Ed. 2103 (1945).

The regulations involved here do not merely facilitate internal agency housekeeping, but rather afford important and imperative procedural safeguards to detainees. *See United States v. Caceres,* 440 U.S. 741, 760, 99 S. Ct. 1465, 59 L. Ed. 2d 733 (1979). This Court must insist on DHS's compliance with the post-order custody regulations if Bonitto's detention is to remain constitutional. *Id.* (noting that the Supreme Court has insisted on forcing agency compliance with their own regulations when the regulations afford individual rights and protections).

The Court is well aware of the executive branch's primacy in this area of law. The Supreme Court has said that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre,* 526 U.S. 415, 425, 119 S. Ct. 1439, 143 L. Ed. 2d 590 (1999) (quoting *Immigration & Naturalization Service v. Abudu,* 485 U.S. 94, 110, 108 S. Ct. 904, 99 L. Ed. 2d 90 (1988)). Nevertheless, the judiciary is the final authority on issues of constitutionality and statutory construction and must reject administrative actions that violate the constitution or laws of the nation.

It is important to emphasize that the Court here is not reviewing and reversing the *manner* in which agency discretion was exercised, but is instead dealing with DHS's failure to exercise its discretion altogether and provide aliens with the applicable process contrary to valid existing regulations. *See Accardi,* 347 U.S. at 268. As the Supreme Court has made clear, there is a "strong tradition in habeas corpus law" that subjects an agency's failure to exercise discretion, unlike an agency's unwise exercise of given discretion, to habeas corpus review. *See I.N.S. v. St. Cyr,* 533 U.S. 289, 307, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) (internal citations and quotations omitted).

Detention beyond the removal period may be maintained only upon compliance with applicable process. For aliens ordered removed like **Bonitto**, that process is specified in 8 C.F.R. § 241.4 and § 241.13. As the Supreme Court warned in *Zadvydas,* serious constitutional problems arise when § 1231 permits indefinite deprivation of human liberty without procedural safeguards. *See Zadvydas,* 533 U.S. at 692. The regulations promulgated in response to *Zadvydas* aim to provide such safeguards. DHS cannot constitutionally continue to detain **Bonitto** without complying with the procedures laid out in the regulations.

### iii. Zadvydas and the Post-Order Custody Review Process.

The Supreme Court has held that the Fifth Amendment's Due Process clause applies to aliens in post-removal-order detention. *See Zadvydas,* 533 U.S. at 690. In interpreting the post-removal-order detention statute to include an implicit reasonableness limit, the Supreme Court noted "the serious constitutional problem arising out of a statute that . . . permits indefinite, perhaps permanent, deprivation of human liberty without such (procedural) protection is obvious." *Id.* at 692.

{547 F. Supp. 2d 757} In response to *Zadvydas,* the regulations governing post-removal-order detention were amended to comply with the Constitutional concerns illuminated in *Zadvydas.* The amended regulations, 8 C.F.R. §§ 241.13 and 241.4, reflect the concerns of the *Zadvydas* Court and provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements. Because these regulations confer important rights upon aliens ordered removed, DHS is bound by these regulations.

### iv. Status of Bonitto's Post-Order Custody Review to date.

It appears that DHS has failed to comply with its own custody-review procedures. Although the notice of ICE's decision in Bonitto's first POCR states that jurisdiction would transfer to HQPDU on December 17, 2007, presumably in order to conduct the 180-day POCR mandated by 8 C.F.R. § 241.4(k)(2)(ii), there is no evidence in the record to show that ICE has conducted a 180-day custody review. The 180-day review was due by December 21, 2007. To date more than nine months, or 270 days, have elapsed since Bonitto's removal period began and he has still not received the POCR required after 180-days of post-removal-order detention.

Further, the Court notes that Bonitto's 90-day POCR occurred almost two months late and contains little basis for the decision to continue detention. In making the 90-day custody determination, ICE must consider its ability to obtain travel documents for the alien. *See* 8 C.F.R. § 241.4(g)(3). The regulations also state that a decision to continue custody "shall briefly set forth the reasons for the continued detention." 8 C.F.R. § 241.4(d). However, neither the recommendation to continue detention by Bonitto's deportation officer nor the notice provided to **Bonitto** to inform him of ICE's decision to continue his detention states any factual grounds or bases for the decision.

The notice merely informs **Bonitto** that "it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time." The recommendation states, in its entirety,

"After careful review of the subject's A-file and documentation listed above, it is the opinion of this Officer that the subject is kept in detention. This Officer believes that if released to the general public he will pose a danger to society. Subject has convictions involving sale drugs, his removal from the U.S. is expected to be effected with in the reasonable foreseeable future therefore I recommend continued detention." (sic)*See* Mot. to Dismiss, Attachment 1. However, in the POCR worksheet, the officer determined that **Bonitto** did not appear to be specially dangerous or likely to be violent in the future, such as would justify continued detention regardless of the likelihood of removal in the foreseeable future under 8 C.F.R. § 241.14(f). *Id.* at 7. None of the documents from the 90-day POCR mention the progress of ICE's efforts to obtain travel documents, the status of repatriation of Jamaican nationals, or any other information that would relate to the likelihood of removal in the reasonably foreseeable future.

The Court recognizes that ICE bears a heavy load in implementing the procedures outlined in its regulations in order to provide aliens ordered removed with essential procedural rights. Federal courts are not here to review every small mistake made by an executive agency in implementing their own regulations. However, Bonitto's procedural due process rights have been violated by DHS's complete failure to provide the required 180-day review, which {547 F. Supp. 2d 758} was due more than three

months ago. The Court's decision that Bonitto's procedural due process rights have been violated can and does rest wholly on the failure of DHS to provide the required 180-day POCR. However the Court notes the shortcomings in the 90-day POCR to caution DHS that such shortcomings are potentially harmful. DHS's denial of release to **Bonitto** at the 90-day POCR juncture may be correct or incorrect, but at present it appears to lack a reasoned basis. If the POCR decisions made by DHS under the regulations in fact lack such a basis, the decisions would raise due process concerns and run afoul of DHS's own regulations.

Conclusory statements that removal is "expected in the reasonable foreseeable future" or that an alien would "pose a danger to society" if released, with no factual basis or explanation, teeters dangerously close to a perfunctory and superficial pretense instead of a meaningful review sufficient to comport with due process standards. The Court reminds DHS that the POCR process contemplated by the regulations is a meaningful individualized review, as the interest involved is the "most elemental of liberty interests--the interest in being free from physical detention." *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992).

*IV. Conclusion.*

Petitioner does not make a showing that his removal is unlikely to occur in the reasonably foreseeable future, as required by *Zadvyas* in order to shift the burden to DHS to rebut that showing. Accordingly, his claim under *Zadvydas* fails.

However, by failing to afford **Bonitto** the required 180-day review, DHS has failed to provide Petitioner with the procedural safeguards contained in the regulations implementing the post-removal-order detention statute. DHS cannot constitutionally detain **Bonitto** without complying with these safeguards, regardless of the fact that **Bonitto** does not here meet his burden under *Zadvydas*. *Zadvydas* allows DHS to continue detaining an alien after the expiration of the removal period *until it has been determined* that there is no significant likelihood of removal in the reasonably foreseeable future. However, the determination required by *Zadvydas* cannot be made if DHS fails to conduct hearings to make such determinations and fails to provide aliens with the procedures due to them under the regulations. Petitioner Bonitto's detention violates his procedural due process rights under the Constitution of the United States. Accordingly, his petition for writ of habeas corpus should be granted conditionally.

**RECOMMENDATION**

For the aforementioned reasons, this Court recommends that the petition for a writ of habeas corpus should be GRANTED CONDITIONALLY. Respondent will be afforded a period of sixty (60) days within which to provide Petitioner a meaningful post-removal custody review, as contemplated in 8 C.F.R. §§ 241.4 and 241.13. If such process is not provided, the Petitioner is to be released unless his removal has been effectuated by that time. Respondent shall file a status report to the Court no later than May 26, 2008 that shall include copies of any and all administrative records used in the review process under the applicable regulations.

The Court further recommends that Respondent's Motion to Dismiss be DENIED and that Bonitto's request for injunctive relief, attorneys' fees, and costs be DENIED.

**NOTICE TO PARTIES**

A party's failure to file written objections to the proposed findings, conclusion, {547 F. Supp. 2d 759} and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure

to object. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 2nd day of April 2008.

/s/ Felix Recio

Felix Recio

United States Magistrate Judge

### Footnotes

1

Pursuant to 1231(a), the removal period for an alien who has been ordered removed but is incarcerated at the time of the removal order begins on the date an alien is released from state confinement. Accordingly, Bonitto's removal period began on June 21, 2007.

2

The 90-day period begins on the latest of (i) the date the removal order becomes administratively final; (ii) if the order is judicially reviewed and the court issues a stay of removal, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). Because **Bonitto** was in state confinement for his criminal convictions, his removal period started the day he was released, June 21, 2007.

3

Through the Regulations implementing 8 U.S.C. 1231, the Attorney General delegated his immigration authority to different DHS and ICE officials for a number of the Attorney General's discretionary functions in the post-removal-order custody review process. In order to avoid confusion and complication that often arises from the provision of unnecessary information, this opinion refers to those officials simply as DHS or ICE unless the specific official is germane to a point of law involved in the current habeas petition.

4

The four types of aliens that may be detained beyond 180 days even if they are not likely to be removed in the reasonably foreseeable future are (1) aliens with a highly contagious disease that threatens public safety; (2) aliens detained on account of serious adverse foreign policy consequences of release; (3) aliens detained on account of security or terrorism concerns; and (4) aliens determined to be especially dangerous. Certifying that an alien meets one of these criteria requires substantial factual support and the determination is made by either an immigration judge or the concurrence of senior government officials. *See* 8 C.F.R. § 241.14.

5

The Respondent's Motion to Dismiss is three pages long and includes a group of documents, presumably attached as exhibits. The attachments include the sparse records from Bonitto's 90-day POCR, including a very basic and brief run-down of the efforts to secure travel documents made by the deportation officer who completed the POCR worksheet. The efforts amount to making contact with the Jamaican consulate and information from the consulate on November 23, 2007, that Bonitto's documents were being reviewed by the Jamaican Ministry of Health. None of these efforts were mentioned or explained in the Motion to Dismiss.

6

**Bonitto** has filed a motion for appointment of counsel, which the Court denies because the interests

of justice do not yet require appointed counsel at this stage. *See* 18 U.S.C. § 3006A(a)(2)(B). However, depending on the progress of efforts to remove Petitioner, the case may become sufficiently complex for the interests of justice to require the appointment of legal representation.
7

The Court notes that a simpler and more appropriate forum for an alien unrepresented by counsel to make the showing laid out in *Zadvydas* is through the post-order custody review process created by DHS regulations and detailed below. DHS created and amended this process to comply with due process constraints and the Supreme Court's *Zadvydas* decision. An administrative procedure is a simpler forum to investigate the facts of the post-removal-order detention situation, as DHS would have a much more complete record before it than the Court currently has, owing to the fact that DHS has access to all of an alien's files and is aware of all of its own ongoing efforts to secure removal. A petitioner proceeding *pro se* has few resources, monetary and informational, to conduct discovery and prepare a sufficient record in a habeas action. However, in an administrative proceeding the need for legal expertise and discovery is not as prominent. The relative ease of administrative adjudication compared to habeas review is no doubt one reason why DHS promulgated regulations to create a custody review process that provides an alien his due process rights.

---

**BRIAN STEPHEN KIRABIRA, Petitioner, v. IMMIGRATION AND CUSTOMS ENFORCEMENT, Respondent.**
**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION**
**2008 U.S. Dist. LEXIS 26430**
**2:08-CV-0031**
**April 1, 2008, Decided**
**April 1, 2008, Filed**

---

**Editorial Information: Prior History**

EXHIBIT 2

---

**WILFRED <u>HAYNES</u>, Petitioner <u>VS</u>. DEPARTMENT OF HOMELAND SECURITY, Respondent**
**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**
**2005 U.S. Dist. LEXIS 13662**
**3:CV-05-0339**
**July 8, 2005, Decided**

---

**Editorial Information: Subsequent History**

**Disposition:**

**Counsel**              Wilfred **HAYNES**, Petitioner, Pro se, York, PA.
                                   For Department of Homeland Security, Respondent: Mark E.
          Morrison, Office of the United States Attorney, Harrisburg, PA.
**Judges:** Thomas I. Vanaskie, Chief Judge.

Opinion

**Opinion by:**          Thomas I. Vanaskie

Opinion

At issue in this habeas corpus proceeding is whether an alien ordered to be removed from the United States on the basis of his criminal convictions may be incarcerated for a prolonged period of time without an opportunity to be heard on the matter of conditional release from confinement because execution of the removal decree has been stayed by judicial order. Concluding that an alien in such a circumstance has a constitutional right to a meaningful individualized determination of his status pending adjudication of the validity of the removal order, I will grant the habeas petition conditionally, directing that Petitioner be released from confinement if he does not receive the type of meaningful review contemplated by 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this decision.

**I. BACKGROUND**

Pro se petitioner Wilfred **Haynes**, a native and citizen of Barbados, alleges that he entered the United States on August 29, 1980 on a tourist visa, and that his status was adjusted to lawful permanent resident in 1983. (Habeas Pet. at P10.) On March 21, 1984, **Haynes** was convicted of criminal possession of marijuana in the second degree, in violation of Section 221.25 of the New York State Penal Law, and criminal possession of a weapon in the third degree for carrying a loaded revolver in violation of Section 265.02 of the New York State Penal Law. (*Id.*) **Haynes** was sentenced to five years probation. (Gov't Ex. G.)

On April 21, 1995, removal proceedings against **Haynes** were commenced by the Immigration and Naturalization Service ("**INS**"). 1 (Gov't Ex. A.) The **INS** charged that **Haynes** was subject to removal from the United States under sections 241(a)(2)(C) and 241(a)(2)(B)(i) of the Immigration and Nationality Act. 2 The record before this Court does not explain the delay in the disposition of the initial deportation charges.

---

In 2002, **Haynes** was arrested for possession of a controlled substance. On January 28, 2003, he was sentenced to a prison term of two to four years for criminal possession of a controlled substance in the fifth degree under section 220.06(5) of the New York State Penal Code. (Gov't Ex. B.) **Haynes** avers that he was taken into custody by the **INS** on January 28, 2004, upon completion of his sentence. (Habeas Pet. at P12.) On March 10, 2004, the **INS** filed an additional charge of inadmissibility/deportability under § 241(a)(2)(B)(i) of the INA due to the 2003 controlled substances conviction. (Gov't Ex. C.)

**Haynes** applied for a waiver of deportation under former § 212(c) of the INA, 8 U.S.C. § 1182(c), and for cancellation of removal under § 240A of the INA, 8 U.S.C. § 1229b(a). (Gov't Ex. D.) On May 12, 2004, an Immigration Judge denied Haynes's claims as a matter of discretion and ordered him removed. (Gov't Ex. D & E.) Although **Haynes** initially waived appeal of the decision to the Board of Immigration Appeals, he later filed a notice of appeal that the Board accepted. (Gov't Ex. D.) The Board then dismissed Haynes's appeal on July 7, 2004, noting that he had withdrawn the appeal. (Gov't Ex. D & F.) **Haynes** filed a motion to reopen, claiming that he had again changed his mind and wished to pursue an appeal. (Gov't Ex. D.) By order dated September 8, 2004, the Board denied the motion. (Gov't Ex. G at 2.)

On September 27, 2004, **Haynes** filed in this Court an "Emergency Petition for Writ of Habeas Corpus" pursuant to 28 U.S.C. § 2241, seeking a stay of removal. (*Haynes v. Department of Homeland Security,* No. 3:04-CV-2142 (M.D. Pa.) On September 28, 2004, a stay of deportation was granted. 3

On October 14, 2004, a records review was conducted by the **INS** to determine whether detention should be continued. (Gov't Ex. G.) It does not appear that **Haynes** was given advance notice of the review. It is clear, however, that he was not afforded an opportunity to appear before the decisionmakers to make a plea for release. Under the Officer Comments/Analysis & Recommendation section of the post custody review form, it states:

> This Subject is under a Stay of Deportation. The subject has a long and sometime violent criminal history. This Officer has obtained many travel documents form [sic] Consulate of Barbados. This Officer is in possession of the subjects [sic] Birth Certificate and other documentation needed to obtain the travel document. This officer recommends the subject be held in custody until the Stay of Deportation is lifted and a travel document is obtained.(*Id.* at 6.) On October 29, 2004, the "Deciding Official" directed that **Haynes** remain in custody. (*Id.*)

**Haynes** states that the written decision ordering his continued detention was served upon him on November 12, 2004. (Habeas Pet. at P15.) He also asserts that authority over his detention was transferred to the Headquarters Post-Order Detention Unit, but that no opportunity for release pending the outcome of his challenge to the removal order has been afforded. (*Id.* at P16.)

On February 17, 2005, **Haynes** filed this habeas corpus proceeding under 28 U.S.C. § 2241 challenging his continued detention. The **INS** answered the Petition on April 11, 2005, and **Haynes** filed a traverse on April 22, 2005. The petition is ripe for disposition.

The **INS** frames the issue before the Court as follows: "Whether **Haynes** is entitled to release from custody where he has a stay of removal which prevents his removal from the United States." (Response to Pet. at 4.) In support of its position that release is not available to **Haynes**, the **INS** asserts that he is being detained pursuant to § 241 of the INA, 8 U.S.C. § 1231. It points out that section 241(a)(2), 8 U.S.C. § 1231(a)(2), prohibits the release of an alien who is deportable under 8 U.S.C. § 1227(a)(2), such as **Haynes**, during the "removal period."

Under 8 U.S.C. § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the

alien from the United States within a period of 90 days." *Id.* § 1231(a). This is known as the "removal period." *Id.* As to the date when the 90-day removal period begins, section 1231(a)(1)(B) provides:

The removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.The **INS** contends that because a stay of removal was issued on September 28, 2004, the "removal period has been tolled." (Response to Pet. at 6.) Thus, argues the **INS**, "**Haynes** is still within the removal period . . . [and] as such, **Haynes** is not eligible for release at this time." (*Id.*) The **INS** observes that, by procuring a stay of removal, **Haynes** bears responsibility for his current detention. (*Id.* at 7-8.)

Essentially, it is the position of the **INS** that **Haynes** remains within the ninety (90) day removal period, the running of which has been suspended as a consequence of the stay of removal. The **INS** uses the term "tolling" in support of its argument that **Haynes** remains within the "removal period," during which detention is mandatory. This position, however, does not find support in the statutory scheme. Section 241(a)(1) does not use the term "tolling" to describe the effect of a stay of removal. On the contrary, the legislation provides that, when a stay of removal has been ordered, the ninety (90) day removal period begins to run only when the court entering the stay issues a "final order." 8 U.S.C. § 1231(a)(1)(B)(ii). Consistent with the statutory language prescribing the commencement date for the removal period, **INS** regulations provide, in pertinent part, that the removal period "shall begin on the *latest* of the following dates: . . . (B) If the . . . court has ordered a stay of the alien's removal, the date on which, consistent with the court's order, the removal order can be executed . . . ." 8 C.F.R. § 241.4(g)(1)(i)(B) (emphasis added). No final order on the merits of Haynes's claims has yet been entered. Thus, under both the statute and the regulations, the removal period has yet to begin. 4

 It has been recognized that "where a court issues a stay pending its review of an administrative removal Order, the alien continues to be detained under [INA] § 236 until the court renders its decision." *Wang v. Ashcroft,* 320 F.3d 130, 147 (2d Cir. 2003). Section 236(c), 8 U.S.C. § 1226(c), requires the Attorney General to take into custody certain classes of criminal aliens, including aliens with convictions of the nature of Haynes's, and generally prohibits their release unless essential to a criminal investigation. In *Demore v. Kim,* 538 U.S. 510, 513, 155 L. Ed. 2d 724, 123 S. Ct. 1708 (2003), the Court sustained the authority of Congress to mandate detention of criminal aliens during *administrative* removal proceedings, but did not address the question presented here: whether the due process clause of the Fifth Amendment requires that a criminal alien be afforded an opportunity to be heard on the question of conditional release pending judicial review of an administrative removal order, the execution of which has been stayed by judicial order. The **INS** argument, premised upon the erroneous contention that Haynes's detention is mandated because he remains within the removal period, ignores this constitutional issue.

The United States Supreme Court "has repeatedly recognized that 'if an alien is a lawful permanent resident of the United States and remains physically present here, he is a person within the protection of the Fifth Amendment.'" *Tineo v. Ashcroft,* 350 F.3d 382, 398 (3d Cir. 2003)(citation omitted). In *Zadvydas v. Davis,* 533 U.S. 678, 150 L. Ed. 2d 653, 121 S. Ct. 2491 (2001), the United States Supreme Court recognized the constitutional implications of prolonged detention for those subject to a valid order of removal. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690. "Government detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as

harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint. '" *Id.* (citations omitted). The fact that the alien has procured a stay of removal does not undermine the due process bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the alien litigates his claims. *Id.* at 690, 691.

Although a bare majority of Justices sustained the authority of Congress to mandate detention of criminal aliens during *administrative* removal proceedings in *Demore,* the opinion of the Court emphasized that such detention would be only "for the *brief* period necessary for their removal proceedings." 538 U.S. at 513 (emphasis added). Justice Kennedy, whose concurring opinion provided the fifth vote for the majority opinion in *Demore,* recognized that a lawful permanent resident "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). In *Ngo v. INS,* 192 F.3d 390, 397 (3d Cir. 1999), our Court of Appeals recognized the applicability of these fundamental principles by explaining that long term detention of an alien ordered removed passes constitutional muster only if "there are adequate and reasonable provisions for the grant of parole . . . and . . . detention is necessary to prevent a risk of flight or a threat to the community." Our Court of Appeals elaborated that the assessment of flight risk and danger to the community must be made on a current basis. *Id.* "To presume dangerousness to the community and risk of flight based solely on [an alien's] past record does not satisfy due process." *Id.* at 398-99.

Furthermore, an alien should not be effectively punished by pursuing applicable legal remedies, such as a stay of removal. As stated by the Sixth Circuit Court of Appeals in *Ly v. Hansen,* 351 F.3d 263 (6th Cir. 2003):

> An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. *Id.* at 272.

In *Lawson v. Gerlinski,* 332 F. Supp. 2d 735 (M.D. Pa. 2004), this Court grappled with the question of whether a criminal alien is entitled to consideration for conditional release while litigating a non-frivolous challenge to the execution of a removal order. This Court concluded that at least "where an alien has satisfied the requirements for securing a stay of removal, detention must be justified by facts showing a flight risk or danger to the community." *Id.* at 746. In other words, an alien who has procured a stay of removal and is facing the prospect of prolonged detention pending adjudication of his or her claims, is entitled to consideration for conditional release. 5 Because the **INS** has taken the position that **Haynes** is not eligible for release, it does not appear that he has received the process afforded to those who are eligible for release after issuance of a final administrative order of removal.

In *Ngo,* 192 F.3d at 399, our Court of Appeals suggested that procedures that included (a) advance written notice to the alien of an opportunity to present information supporting release, (b) the right to representation by counsel or other individuals, (c) an opportunity for periodic personal interviews, (d) a written explanation for a custody decision, (e) the opportunity for review by **INS** headquarters, (f) periodic reviews of custody decisions, and (g) a refusal to presume continued detention based upon criminal history, would, if conscientiously applied, satisfy due process concerns. Such procedures appear to be embodied in 8 C.F.R. § 241.4(i), which govern post-removal order release determinations by the Executive Associate Commissioner for Field Operation for any alien who is not removed within three months after an initial records review made by the Headquarters Post-Order Detention Unit. 6 The regulations also supply the appropriate analytical framework for a decision to continue detention. See 8 C.F.R. § 241.4(d) and (e). 7 These provisions should apply to an alien such as **Haynes,** who has received a records review and who has been in custody for more than six months after a stay of removal was entered. Otherwise, an alien who poses no threat to the

community or flight risk can be detained indefinitely while litigating a substantial challenge to a deportation order. The **INS** position that an alien such as **Haynes** is ineligible for consideration for conditional release is inconsistent with the constitutional command that liberty be taken away only for appropriate reasons and only after the affected individual has been afforded a meaningful opportunity to be heard on the appropriateness of detention.

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus will be granted conditionally. Respondent will be afforded a period of sixty (60) days within which to provide Petitioner the post-removal custody process set forth in 8 C.F.R. § 241.4(i). If such process is not provided, Petitioner is to be released. 8

Thomas I. Vanaskie, Chief Judge

Middle District of Pennsylvania

**NOW, THIS 8th DAY OF JULY, 2005,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Petition for a Writ of Habeas Corpus is **GRANTED CONDITIONALLY.**

2. Respondent shall undertake a review of Petitioner's custody status in accordance with the provisions of 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this Order.

3. If Respondent fails to provide Petitioner with the process required by 8 C.F.R. § 241.4(i) within sixty (60) days from the date of this Order, Petitioner shall be released from confinement subject to pertinent conditions of supervision.

4. Respondent shall file a status report with this Court no later than August 31, 2005.

5. The Clerk of Court is directed to mark this matter **CLOSED.**

Thomas I. Vanaskie, Chief Judge

Middle District of Pennsylvania

### Footnotes

1

On March 1, 2003, the functions of the INS were assumed by the Department of Homeland Security. Within the Department, the Bureau of Immigration and Customs Enforcement now has the duty of investigating and enforcing immigration laws within the borders of the United States. For the sake of simplicity, this opinion will refer to the INS as the immigration enforcement authority. Moreover, for the sake of clarity, the Respondent in this proceeding will be referred to as the INS.

2

INA § 241(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C), states:

Certain firearm offenses. Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of title 18) in violation of any law is deportable.INA § 241(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), provides:

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.
3

The stay was still in effect on June 29, 2005, when the challenge to the validity of the removal order was transferred to the United States Court of Appeals for the Third Circuit pursuant to the Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 311 (2005). The INS may now seek to have the stay of removal vacated by the Court of Appeals.
4

Section 241(a)(1)(C) of the INA, 8 U.S.C. § 1231(a)(1)(C), does provide that "the removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period" where the alien refuses to cooperate in securing travel or other pertinent documents or otherwise acts to prevent removal. The statute does not equate the procurement of a judicial order staying removal with active prevention of removal. Indeed, legislation equating the exercise of a constitutional right to seek redress in the courts with refusing "to make timely application in good faith for travel or other documents necessary to the alien's departure or . . . acting to prevent . . . removal," 8 U.S.C. § 1231(a)(1)(C), would be problematic. *See Abukar v. Ashcroft,* 2004 U.S. Dist. LEXIS 5998, No. Civ. A. 01-242, 2004 WL 741759, at *3 (D. Minn. March 17, 2004)(rejecting as "untenable" the argument that the alien had "acted to prevent his removal" by procuring a stay of removal, and directing the release of the alien pending the outcome of his challenge to the validity of the removal Order); *Oyedeji v. Ashcroft,* 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004)("The price for securing a stay of removal should not be continuing incarceration."). Section 241(a)(1)(C) contemplates action not taken in good faith by the alien, and does not encompass action taken by the alien to obtain judicial review of a cognizable claim.
5

It bears noting that to secure a stay of removal an alien must satisfy the traditional four-pronged test for preliminary injunctions, which, of course, include presentation of at least a substantial issue. *See Douglas v. Ashcroft,* 374 F.3d 230, 233-34 (3d Cir. 2004).
6

Under 8 C.F.R. § 241.4(i), the HQPDU Director is required to designate a panel to make recommendations to the Executive Associate Commissioner on whether an alien should be released or detained. The review panel generally consists of two persons. All recommendations by the two-member review panel must be unanimous. If the vote of the two-member panel is split, it shall adjourn until a third review panel member is added. A recommendation by a three-member review panel shall be by majority vote.

Initially and at the beginning of each subsequent review, the HQPDU Director or a review panel shall review the alien's records. After completing the records review, the HQPDU Director or the review panel may issue a written recommendation that the alien be released. If the HQPDU Director does not accept a panel's recommendation to grant release after a records review, or if the alien is not recommended for release, a review panel shall personally interview the detainee. The alien may be accompanied during the interview by a person of his or her choice, subject to reasonable security concerns at the institution's and panel's discretion. The alien may submit to the review panel any information he or she believes presents a basis for his or her release. Following the interview and its deliberations, the review panel shall issue a written recommendation that the alien be released or remain in custody pending removal or further review. This written recommendation shall include a brief statement of the factors that the review panel deems material to its recommendation. The

---

Executive Associate Commissioner shall then consider the recommendation and appropriate custody review materials and issue a custody determination after considering the criteria and factors listed in 8 C.F.R. § 241.4(e)-(f).

7

Under 8 C.F.R. § 241.4(d), an alien may obtain release from administrative confinement by showing that release will not pose a significant risk of flight and danger to the community, to the safety of other persons, or to property pending the alien's removal. Under 8 C.F.R. § 241.4(e), an alien is eligible for release if the review panel and Director of the HQPDU find that the following criteria are met: (1) travel documents are not available or the Service opines that immediate removal is otherwise not practicable or not in the public interest; (2) the detainee is presently a non-violent person; (3) the detainee is likely to remain nonviolent if released; (4) the detainee is not likely to pose a threat to the community following release; (5) the detainee is not likely to violate the conditions of release; and (6) the detainee does not pose a significant flight risk if released.

8

If Respondent determines that detention of Petitioner should be continued, Petitioner may, of course, commence an appropriate action under 28 U.S.C. § 2241 challenging the detention decision. And, of course, if the Court of Appeals vacates the stay of removal, Respondent will be at liberty to take the action required to effect Petitioner's removal from the United States and to detain him during the removal period.