UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

-------------------------------------------------------------x

**KESTER OBOMIGHIE**
A 29697-189

                        Petitioner,         Civil Action Number:

  - against -

                                       4:11-cv-03978-WMA-RRA

**ERIC HOLDER,** United States Attorney
General, et al.,

                        Respondents.

-------------------------------------------------------------x

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. §2241**

 

SULLIVAN GARDNER PC
7 East 20th Street
New York, New York 10003
(212) 687-5900
bg@sullivangardner.net

By: Brian Gardner
*Attorneys for Petitioner*

Petitioner Kester Obomighie (Obomighie), through his undersigned counsel, respectfully submits this Supplemental Reply Memorandum of Law in further support of his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention under the color of authority of federal law as being in violation of the Constitution and Laws of the United States of America. All prior submissions by Obomighie have occurred by way of pro se submission in this proceeding. We respectfully request that we be allowed, as new counsel, to supplement the prior submissions by way of this reply.

## PRELIMINARY STATEMENT

In response to the habeas application, the Government does not: (i) claim that Petitioner is a risk of flight, (ii) claim that Petitioner is a danger to the community, (iii) claim that the 90 day removal period of 8 U.S.C. § 1231 has not long ago expired, (iv) claim that the six month period described in *Zadvydas v. Davis*, 533 U.S. 678 (2001), has not long ago expired, (v) claim that the mandatory detention reviews explicitly provided for in 8 U.S.C. § 1231 occurred, (vi) claim that travel documents have been issued during the past 12 months, (vii) claim that in the past 12 months petitioner has done anything to obstruct or interfere with his removal, (vii) state the factors required to be reviewed under §1231 were actually reviewed, or (v) provide documents in the Return supporting Petitioner's continued detention.

Rather, the Government argues that the Petitioner's almost 29 months of detention should not be disturbed because: (i) it has an absolute right to detain him, even indefinitely, without any judicial oversight, solely because he is a "criminal alien", Gov't Memo. p. 9, (ii) it can detain him pursuant to 8 U.S.C. § 12341(a)(1)(c) because he "has

1

failed to cooperate and has actively obstructed the removal process", Gov't Memo p. 13, based on a single event that occurred more than a year ago, and (iii) that he is "deportable in the 'foreseeable future", without any explanation or support.

In making these arguments, the Government takes a truly extreme position that is not, and cannot be, supported by any existing precedent. It is directly contrary to the Supreme Court's decision in *Zadvydas*, every case interpreting *Zadvydas,* and every decision to review when obstructionist behavior can be grounds to continue detention under 8 U.S.C. § 12341(a)(1)(c). It presents the archetypical situation of the necessity for judicial oversight, sets forth a basis for detention that is clearly contrary to law, and it does not otherwise attempt to support Petitioner's detention. Petitioner here has always maintained that he is not a flight risk or danger to the community, and not subject to removal in the reasonably foreseeable future.

Accordingly, for the reasons set forth herein, and the previously submitted papers, the Petitioner should be granted immediate release upon whatever terms of supervision this Court deems appropriate.

## ARGUMENT

Pursuant to 28 U.S.C. §2243, in responding to the application for a writ of habeas corpus, the Government is required to "make a return certifying the true cause of the detention." In its return, the Government discusses generally various cases and governing law. However, as to the petitioner, the return is quite limited as to its certification of the "true cause" for continuing incarceration. The Government's position is entirely untenable under the law, as well as the principles of a just society.

I.   **THE GOVERNMENT'S CLAIM OF AUTHORITY FOR INDEFINITE DETENTION IS WHOLLY ERRONEOUS AND AN EGREGIOUS MISUESE OF ITS POWER**

It is truly shocking that the Government can seriously take the position that they have the authority to detain an alien indefinitely based solely upon his status as removable for violating the criminal law. The Government boldly asserts that "where removal arrangements cannot be finalized within the 90-day period, an alien ordered removed who is…removable for violating …the criminal law…may be detained." Gov't Memo p. 6. The Government maintains that a status as a "criminal alien" can be the sole basis for an alien to "be indefinitely detained pending deportation", without any review of flight risk, danger, removal in the reasonably foreseeable future or other factors. Id pp. 6, 9.

The Supreme Court has clearly and specifically found such a policy to be in violation of the Due Process Clause of the Fifth Amendment.  *Zadvydas v. Davis*, 533 U.S. 678 (2001).  However, the Government actually concludes the first point of its memorandum on this issue by stating that: "[a]s an inadmissible alien or criminal alien, the Petitioner does not fall within the protections of *Zadvydas v. Davis*, 533 U.S. 678 (2001) and may be indefinitely detained pending deportation to his homeland as the state of the law currently exists with the Eleventh Circuit." Gov't Memo p. 9.

The Government cites to, and exclusively relies upon, an Eleventh Circuit cases that predated *Zadvydas* by 16 years and a Supreme Court case that predated *Zadvydas* by 48 years, respectively *Jean v. Nelson*, 727 F. 2d 957 (11th Cir. 1984); *Shaughness v. United States ex rel Mezei*, 345 U.S. 206 (1953). This position is outright unconstitutional and downright dangerous.

3

*Zadvydas* itself dealt with two criminal aliens that it found were faced with indefinite detention. The Government discusses this fact, but somehow draws from it that indefinite detention is acceptable. This is precisely the harm addressed by *Zadvydas*. In discussing criminal aliens, *Zadvydas* specifically directs that regardless of how the statute may read, if removal cannot occur within 90 days, then it finds that six months is a constitutionally presumptively reasonable period in which to effect removal. Should removal not occur within six months, then for detention to continue there needs to be a determination that it will occur in the reasonably foreseeable future, a period of time that shortens as the detention lengthens. *Zadvydas*, 533 U.S. at 701. At all times, after 90 days of detention, the principle purpose of detention, to assure presence at the time of removal must be considered, and danger to the community can be a factor. *Id.* at 690-91, 699. However, after six months of detention the presumption of constitutionality is lost. *Id.* at 701. Here, detention has gone on for almost two years after the expiration of this presumptively constitutional period. Likewise, the statutory provisions requiring a review of factors and a manner of review at 180 days, and thereafter do not cease to exist because the Petitioner happens to be in the 11th Circuit. Again, the Government makes the bold statement that "DHS has continued to follow all regulatory requirements." However, they cite to only Exhibit 1, generally for this position, and as discussed supra, Exhibit 1 makes clear that the regulatory requirements were not followed, and moreover that no attempt to follow them occurred.

Accordingly, we respectfully submit that the Court should reject the Government's contention that they have the authority to indefinitely detain the Petitioner on this basis.

4

## II. PETITIONER'S DETENTION IS UNCONSTITUTIONAL UNDER 8 U.S.C. §1231 BECAUSE HE IS BEING DETAINED WITHOUT JUSTIFICATION OF A RISK OF FLIGHT OR DANGER TO THE COMMUNITY

Perhaps not surprisingly, considering the Government's apparent support of indefinite detention and its wholesale rejection of the due process protections afforded by *Zadvydas*, the Government argues that it is not bound by the statutory and regulatory regime enacted to ensure that the detainee is given constitutionally required custody reviews and that proper justification is established for continued detention. In response to the habeas application, the Government contends that Petitioner is being detained under 8 U.S.C. §1231. Gov't Memo pp 6, 10. The Government states "it is important to note that a final administrative removal order has been issued". Gov't Memo p. 7. It cites to "See generally Exh. #1" for this proposition. The latest order of removal in exhibit 1 is on November 8, 2004. Although, the Government does not specify which order or when, it is presumably this order that became final when no appeal was taken of it.

8 U.S.C. §1231 authorizes the attorney general to detain an alien that is subject to a final order of removal during and, in certain situations, after the "removal period." The "removal period" is defined as the 90 days following date that an order of removal becomes administratively final, or such other date as defined in §1231(a)(1)(B)(ii)-(iii).

*Government's Failure to Provide Mandated Reviews and Consider Required Factors*

The principal justification for detention under 8 U.S.C. §1231 is "assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. As such, because in most cases, removal is effected within the 90 days following the final order of removal, the attorney general "shall" detain the removable alien for the 90 day removal

5

period. 8 U.S.C. §1231(a)(2). If, after the passing of the 90 day "removal period," the alien has not been removed, the Government is required to justify its continued detention by establishing that the alien is a risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690-91. The procedure for this determination is set forth in 8 C.F.R. §241.4(f), which requires a number of factors to be considered.[1] In *Zadvydas*, the Supreme Court stated the two justifications for civil detention of an alien following the expiration of the 90 day removal period: "preventing flight" and "protecting the community." 533 U.S. at 690-91.

As the Government states that Petitioner's detention is governed by §1231, Petitioner must be afforded the custody reviews contained in 8 C.F.R. §241.4(f). We submit that the Government does not attempt to address the 8 C.F.R. §241.4(f) factors because it has not, and cannot, show from these factors that detention is justified. Rather without any explanation or support the Government merely states that "[a]ll regulatory guidelines have been followed." Gov't Memo. p. 7. However, by its description of what reviews occurred, the Government concedes that the mandated reviews due process reviews were not provided to Petitioner, nor were the factors of §241.4(f) considered.

In its return the Government states that during Petitioner's 29 months of incarceration he has received one detention review. The Government states that "[o]n December 13, 2010, Petitioner was afforded a post order custody review by the Baltimore Field Office". Exhibit 1, # 16. This is after he was in immigration detention for over a

---

[1] The factors include: disciplinary record while incarcerated by ICE or otherwise; criminal history; mental health reports; evidence of rehabilitation while incarcerated, including work, educational or vocational programs; ties to the U.S., such as close relatives here lawfully; prior immigration violations; likelihood that detainee is a "significant flight risk"; and any other information probative of if the detainee is adjust to the community, or pose a danger to the community, or violate conditions of release. 8 C.F.R. §§ 241.4(h)(3), 241.4(f).

6

year (on October 26, 2009, Petitioner was located …and then detained in ICE custody"). Exhibit 1, #14.

The failure to provide the Petitioner with a 90 day, and a 180 detention review, with all of the corresponding due process rights included in those reviews, is inexcusable, and the Government does not attempt to articulate an excuse. This 180 day review regulatory scheme was enacted post-*Zadvydas* to assure due process compliance at the critical six month juncture. Section 8 C.F.R. §241.4 calls for a number of protections including a review of the factors in 8 C.F.R. §241.14, a personal interview if detention may be continued, a panel review of detention and the shifting of the detention determination from the Field Office to the Executive Associate Commissioner.  8 C.F.R. §241.4(i)(1)-(6).  Here, Petitioner was not afforded either this 180 day review, or the initial 90 day review called for by the same statute.  Rather, detention continued for over a year without a review and then again has continued for a year and a half without any further review.

The Government's only attempted justification for this failure as well as generally for the continued detention is that "Obomighie failed to cooperate and has actively obstructed the removal process." Gov't Memo. p. 13. As such it maintains that pursuant to 8 U.S. C. § 1231(a)(1)(c) it did not have to provide reviews nor release the Petitioner. This position is ludicrous and directly contrary to the applicable statutes and relevant case law.

The Government claims this obstructionist "behavior has been on going (sic) since November 8, 2004". Gov't Memo p. 13. This is when they claim Petitioner failed to appear at an immigration hearing. This is not obstructionist behavior under the cited

7

statute, 8 U.S.C. § 1231(a)(1)(c), since that statute is only applicable to a post order of removal situation, and where the alien is detained.[2] Seemingly, the Government is also arguing that a failure to cooperate and obstructionist behavior occurred when the Petitioner allegedly refused to board a plane in February of 2011. Putting aside the different factual positions on what occurred that day, this singular event does not justify the Petitioner's detention before or after that day. This is why the Government does not even attempt to simply rely on that day's events as supporting the continued detention. Indeed, the fact that travel documents were issued for that day evidences the Petitioner's cooperation. Moreover, subsequent to that day, the Government cannot point to one event of lack of cooperation or obstructionist behavior by the Petitioner. This is a critical failure on their part. All they can point to as the basis for the lack of removal is that the Nigerian Government has refused, and continues to not provide travel documents. See, Detention Decision of December 2011, and Exhibit 1, # 33. Since February 2011, over a year ago, the Government cannot allege that Petitioner has done anything to fail to cooperate.

The case law the Government relies upon evidences that in such circumstances the alien should be released. It cites to *Brown v. Gonzales*, 2007 WL 2790585 (N.D. Fla. Sept. 23, 2007), and *Sango-Dema v. District Director*, 122 F.Supp.2d 213 (D. Mass. 2000), both cases speak to the fact that regardless of a prior lack of cooperation, once the detained alien complied in good faith, the Government could not continue detention without complying with *Zavydas* and the applicable statutory and regulatory provisions.

Here, the only actual potential lack of cooperation occurred in February 2011 when Petitioner seemingly refused to board a plane. But as we understand the

---

[2] 8 U.S.C. § 1226 applies to detention pre-order of removal, however neither section deals with failure to appear at the IJ process, as both address detention.

8

circumstance, Petitioner explained, this incident occurred because he believed that a stay had been granted. He merely wanted to inquire if that was so. He explained that if it was not so, he would board the plane. The officers would have no discussion or provide information on the issue of a stay. Regardless, this was a single isolated incident, without any other allegation of a lack of cooperation whatsoever before or after.

Again, there is no plausible explanation for the lack of reviews prior to and subsequent to this February 2011 date. Further, there is absolutely no explanation as to why release has not occurred. The Government does not, in its return or anywhere else, make the affirmative statement or finding that Petitioner is a flight risk or a danger to the community. The Government, in one paragraph, cites the principle that "so long as removal is reasonably foreseeable, the alien's potential dangerousness or risk of his committing further crimes may be considered in determining whether to retain custody." Gov't Memo p. 12 (citing *Zadvydas* and 8 C.F.R. § 241.4). Even presuming this statement of the law is correct, (that is that detention is not continued pursuant to 8 C.F.R. § 241.14 for specially dangerous individuals), the Government must make a reasonable finding of dangerousness, considering the factors described in 8 C.F.R. § 241.4. This has not occurred. Indeed, there is absolutely no statement by the Government as to dangerousness or as to flight risk. Yet, the Government has continued in the extraordinary step of civilly detaining the Petitioner, and is doing so on an indefinite basis.

Further, as to the issue of his removal in the reasonably foreseeable future, the Government merely states it is so, while the evidence they provide exhibits just the opposite. Moreover, as the Government recognizes, the Court in *Zadvydas* stated that as

9

the time of incarceration increases what is in the reasonably foreseeable future period shortens. 533 U.S. at 701. Here, the incarceration has been for 29 months, any period that is in the reasonably foreseeable future must be a very short period. Yet, the only statement the Government can provide on this topic shows that there is no evidence of removal in the reasonably foreseeable future. Mr. Smith recounts in his declaration annexed as exhibit 1, his efforts in the past year to obtain travel documents. It shows that ICE made repeated requests for the travel documents, see exhibit 1, ## 26, 27, 28, 30, and even presented "Petitioner's case in person to the Consulate General of Nigeria, the last time on December 6, 2011, over three months ago. Exhibit ## 31, 32, yet as of the writing of this memorandum no documents have been issued. The most that the Government can say is that "the Government of Nigeria has not declined to issue a travel document" (Exhibit 1, 33, Gov't Memo p. 4), but that as of the writing of the return the documents had not been secured even after the extraordinary attempts by ICE, with the full cooperation of Petitioner, nor has the government of Nigeria indicated that they would issue a travel document.

Additionally, the Government has no discussion as to why it took from the February 8, 2011 plane incident until October 9, 2011 for it to seek new travel documents. Eight months is a long time for incarceration to occur without any detention review, or attempt at removal. Again, subsequent to the February 8, 2011 incident, the Government makes no claim that Petitioner has failed to cooperate.

The Government, as the matter stands, has absolutely no idea if or when travel documents will be issued. As such, considering Petitioner's 29 months of incarceration, it cannot be legitimately said that removal will occur in the reasonably foreseeable future.

Accordingly, we respectfully submit that the Court should grant the Petition and order Petitioner's immediate release.

## CONCLUSION

For the foregoing reasons Petitioner respectfully requests that the Petition be granted and that the court order Petitioner's immediate release.

Dated: New York, New York
March 16, 2012

                                              Respectfully submitted,
                                              SULLIVAN GARDNER PC

                                  By: ___/s/ Brian Gardner_____
                                       Brian Gardner
                                       *Attorneys for Petitioner*
                                       7 East 20th Street
                                       New York, New York 10003
                                       (212) 687-5900

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
-------------------------------------------------------------x
**KESTER OBOMIGHIE**
A 29697-189

                        Petitioner,          Civil Action Number:

  - against -

                                            4:11-cv-03978-WMA-RRA

**ERIC HOLDER,** United States Attorney
General, et al.,                              **CERTIFICATE OF SERVICE**

                       Respondents.
-------------------------------------------------------------x

      I, Brian Gardner, certify under penalty of perjury that on March 16, 2012, I served a copy of the Supplemental Reply Memorandum of Law on the following by filing the documents with the Court's electronic filing system, providing electronic notification:

John.Bell2@usdoj.gov

                                                  _____*/s/ Brian Gardner*_____
                                                      Brian Gardner